Patrick H. ZIMICK, Appellant,

v.

Togo D. WEST, Jr., Acting Secretary of Veterans Affairs, Appellee.

No. 94–1125.

United States Court of Veterans Appeals.

Argued Oct. 23, 1997.

Decided Jan. 29, 1998.

Linda E. Blauhut, with whom Michael P. Horan, Washington, DC, was on the brief, for the appellant.

Michele Russell Katina, with whom Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; and Thomas A. McLaughlin, Deputy Assistant General Counsel, Washington, DC, were on the brief, for appellee.

Before FARLEY, IVERS, and STEINBERG, Judges.

FARLEY, Judge:

This is an appeal from an August 19, 1994, decision of the Board of Veterans' Appeals (BVA or Board) which determined that the criteria for payment of private medical expenses incurred while the appellant was hospitalized at a non-VA facility had not been met. This appeal is timely and the Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). For the reasons that follow, the Court will affirm the Board's decision.

## I. FACTUAL BACKGROUND

The appellant, Patrick Zimick, is a veteran of the U.S. Army who served on active duty from October 1966 to October 1968. Record (R.) at 18. He has no adjudicated service-connected disabilities. On March 14, 1990, the appellant went to the emergency room of Northfield Hospital in Northfield, Minnesota, after partially amputating his right index finger and sustaining multiple lacerations to three other fingers on his right hand. R. at 36, 51. After discussing treatment options and learning that the appellant was a veteran, the emergency room doctor, Dr. Behrens, telephoned the nearest VA Medical Center (VAMC) to seek admission for the appellant. The head surgeon at the VAMC, Dr. Stephanian, reportedly stated that the appellant should not come to the VA facility because no one there could perform the required micro-

surgery. R. at 21. Rather, Dr. Stephanian is said to have told Dr. Behrens to send the appellant to Hennepin County Medical Center (HCMC) and that the surgery could be performed there at VA expense. R. at 21, 36. Relying on the statements of Dr. Stephanian, the appellant chose to go to HCMC and to undergo microsurgery to save his finger rather than having it surgically amputated. R. at 51. A representative from the VAMC contacted HCMC by telephone the following day regarding the appellant's surgery. R. at 23. The appellant was discharged from HCMC on March 17, 1990. R. at 25.

A Report of Contact form dated March 14, 1990, and signed by Steven Sawyer, a VA medical administrative assistant, confirms that Dr. Stephanian told Dr. Behrens that VA would pay for the appellant's surgery at HCMC. R. at 21. However, the report also suggests that "the doctor" was told by Mr. Sawyer that unless the appellant was first evaluated at the VAMC, VA might not cover the expenses. *Id.* The report is not clear as to whether "the doctor" refers to Dr. Behrens or Dr. Stephanian. According to Harold May, Chief of the VA Medical Administration Service, "when these calls are made, the administrative person, Mr. Sawyer[,] and the physician are on the line at the same time." R. at 60. The reference of Mr. May was not case specific, however, and there is no evidence of record which indicates that the appellant or Dr. Behrens was aware of Mr. Sawyer's statements. In fact, both individuals have indicated that they were informed that VA would pay. R. at 36, 58. On a subsequent Report of Contact form initiated over two years later, Mr. Sawyer stated that he did not recollect the conversation referenced in the March 1990 Report of Contact. R. at 67. Despite not having a recollection of the conversation, Mr. Sawyer was "positive that he was very [explicit] and both the non-VA and VA physician were aware that the VA would not authorize care for [the appellant]." *Id.*

In March 1990 and again in October 1990, HCMC and the appellant were notified that VA could not pay for the expenses incurred by the appellant because the condition for which the appellant had received treatment was not service connected. R. at 32, 34. The October notice stated that a Notice of Appellate Rights had been enclosed. *See* R. at 34. The appellant thereafter filed a Notice of Disagreement (NOD) with the VAMC, and a Statement of the Case was issued. R. at 47–49; *see* R. at 38. Before the administrative appeal proceeded to the BVA, a hearing was held in June 1992 and the appellant described the events surrounding his emergency treatment. R. at 56–65. The appellant's wife testified that on March 14, 1990, she spoke to the VA medical administrative assistant and, after being asked a series of financial questions, was told that VA would pay for the appellant's medical treatment at HCMC. R. at 62. The hearing officer commented that "[w]e have every authority under the administrative error to cover the cost incurred to you because of our error. That's the issue that we have to discuss and make a decision on." R. at 65. Although the hearing officer presumably declined to obligate VA to cover the expenses pursuant to an administrative error, the record on appeal (ROA) does not contain that decision. Val and Dean Naber, neighbors of the appellant who went to the emergency room with the appellant's wife and who purportedly overheard conversations with the emergency room doctor, later submitted statements verifying that Dr. Behrens had told the appellant and his wife that VA would pay for the appellant's surgery "but that VA would not pay for the ambulance ride" to HCMC. R. at 74.

In the decision on appeal, the Board found that the appellant had not received prior authorization for admission to a non-VA facility at VA expense. R. at 8. The Board concluded that because there had been a conference call between Dr. Stephanian, Dr. Behrens, and Mr. Sawyer, the "contradictory positions of [Dr. Stephanian] and the Medical Administrative Assistant cannot reasonably be interpreted as authorizing private treatment at VA expense." *Id.* The Board thus concluded that the appellant had not met the requirements of 38 U.S.C. § 1703, which authorizes VA to contract with non-VA facilities when a VA facility is not capable of providing the necessary services. The Board also

found that the appellant was not eligible for reimbursement for unauthorized medical expenses incurred at a private hospital under 38 U.S.C. § 1728. R. at 9. This appeal followed.

## II. JURISDICTION

■ The Secretary suggested during oral argument in this case that the Court did not have jurisdiction to review part and perhaps all of the appellant's claim. The Court will address these threshold issues before proceeding to the merits of this appeal.

The appellant initiated his claim with the VAMC after VA refused to pay the expenses incurred by him at HCMC. Therefore, the VAMC was the agency of original jurisdiction (AOJ). *See* 38 C.F.R. § 20.3(a) ("AOJ" includes any department facility which made the initial determination on a claim). Following the initial denial by the VAMC of his claim, which was accompanied by a Notice of Appellate Rights as required by regulation, *see* 38 C.F.R. § 3.103(b), the appellant filed an NOD and an appeal to the BVA, *see also* R. at 40. Although specific medical determinations as to the appropriate medical treatment are not adjudicative matters over which the Board has jurisdiction, *see* 38 C.F.R. § 20.101(b), the appellant's claim was premised not upon the appropriateness of a particular course of treatment, but upon reimbursement for the cost of such treatment. The "Board's appellate jurisdiction extends to questions of eligibility for hospitalization, outpatient treatment, ... and for other benefits administered by the Veterans Health Administration." 38 C.F.R. § 20.101(b). A "benefit," as defined in the regulations pertaining to the BVA's Rules of Practice, is "any payment, service, commodity, function, or status, entitlement to which is determined under laws administered by the [VA] ... pertaining to veterans and their dependents and survivors." 38 C.F.R. § 20.3(e); *see also Grovhoug v. Brown*, 7 Vet.App. 209, 215 (1994). The benefit in this case would be payment for the services received at HCMC.

The Secretary "shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of *benefits* by the Secretary to veter-

ans." 38 U.S.C. § 511(a) (emphasis added). A veteran has the right to "one review on appeal" of such a decision. *See* 38 U.S.C. § 7104(a); *see also* VA Medical Administration Service's Fee Basis Guidebook, 6–2 ("Anytime a veteran applies for any type of *benefit* (outpatient treatment, hospitalization, prosthetic appliances, *payment for non-VA care* etc.) which a [VA] facility denies, that veteran has the right to appeal that decision.") (emphasis added). Within VA, "[f]inal decisions on such appeals shall be made by the Board." 38 U.S.C. § 7104(a). Therefore, the Board had jurisdiction to hear the appeal and, since the Court's jurisdiction is derivative of that of the BVA, (i.e., the Court hears appeals from decisions of the BVA pursuant to 38 U.S.C. § 7252(a)), the Court necessarily has jurisdiction to consider this appeal. The Secretary's argument to the contrary must be and is rejected.

■ The Secretary also argues that the "decision to furnish 'fee-basis service' is, in the plain language of section 1703, a matter wholly subject to the Secretary's discretion" and therefore, not subject to review. Secretary's Sur–Reply Brief at 7 (citing *Webb v. Brown*, 7 Vet.App. 122 (1994)). However, this Court is not purporting to review the issue of whether VA *should* have contracted with a non-VA facility to furnish hospital care. Rather, the issues are whether VA *did* in fact enter into a contract with a non-VA facility and whether the appellant is entitled as a matter of law to receive payment or reimbursement for expenses incurred at that non-VA facility. Although the initial decision whether to enter into a contract with a non-VA facility might be left to the Secretary's discretion, as evinced by Congress' use of the term "may" in section 1703(a), a Board *decision* denying a *benefit* which is premised upon whether such a contract was actually formed is subject to review. *See* 38 C.F.R. § 20.101(b); 38 U.S.C. § 7252(a). The Court thus concludes that the denial of reimbursement and the findings and conclusions which prompted that denial are not matters "wholly subject to the Secretary's discretion" and, therefore, the Board's decision is subject to judicial review on this issue.

## III.   ANALYSIS

At the outset, the Court notes that many of the applicable statutes and regulations have been amended since the appellant's claim arose.   To avoid confusion, the Court will cite to the amended statutes and regulations unless there has been a substantive change; then the Court will cite to the provision in effect at the time the appellant's claim arose.

### A.   38 U.S.C. § 1728

Pursuant to 38 U.S.C. § 1728(a), the Secretary may reimburse veterans entitled to hospital care or medical services for the reasonable value of such services that are provided by a non-VA facility if:

(1) such care or services were rendered in a medical emergency of such nature that delay would have been hazardous to life or health;

(2) such care or services were rendered to a veteran in need thereof (A) for an adjudicated service-connected· disability, (B) for a non-service-connected disability associated with and held to be aggravating a service-connected disability, [or] (C) for any disability of a veteran who has a total disability permanent in nature from a service-connected disability . . .; *and*

(3) Department or other Federal facilities were not feasibly available, and an attempt to use them beforehand would not have been reasonable, sound, wise, or practical.

38 U.S.C. § 1728(a)(1)-(3) (emphasis added).

The appellant has essentially conceded that he is not eligible for reimbursement of medical expenses incurred at HCMC under 38 U.S.C. 1728.   Moreover, he does not have any service-connected disabilities and thus does not meet all of the requirements set forth in the statute.   Therefore, reimbursement is not available under 38 U.S.C. § 1728. *See Smith v. Derwinski,* 2 Vet.App. 378, 379 (1992).

### B.   38 U.S.C. § 1710

In order to receive hospital care at VA expense, a veteran first must meet the basic eligibility requirements of 38 U.S.C. § 1710, which provides:

(a)(1) The Secretary (subject to paragraph (4)) shall furnish hospital care and medical services, and may furnish nursing home care, which the Secretary determines to be needed—

(A) to any veteran for a service-connected disability;   and

(B) to any veteran who has a service-connected disability rated at 50 percent or more.

(2) The Secretary (subject to paragraph (4)) shall furnish hospital care and medical services, and may furnish nursing home care, which the Secretary determines to be needed to any veteran—

(A) who has a compensable service-connected disability rated less than 50 percent;

(B) whose discharge or release from the active military, naval, or air service was for a compensable disability that was incurred or aggravated in the line of duty;

. . .

(D) who is a former prisoner of war;

(E) who is a veteran of the Mexican border period or of World War I;

(F) who was exposed to a toxic substance, radiation, or environmental hazard, as provided in subsection (e);   or

(G) who is unable to defray the expenses of necessary care as determined under section 1722(a) of this title.

(3) In the case of a veteran who is not described in paragraphs (1) and (2), the Secretary may, to the extent resources and facilities are available and subject to the provisions of subsections (f) and (g), furnish hospital care, medical services, and nursing home care which the Secretary determines to be needed.

(4) The requirement in paragraphs (1) and (2) that the Secretary furnish hospital care and medical services shall be effective in any fiscal year only to the extent and in the amount provided in advance in appropriations Acts for such purposes.

This statute was amended in 1996, after the appellant's claim arose, to include the limiting provision of subsection (a)(4).   *See* Veterans' Health Care Eligibility Reform Act of

1996, Pub.L. 104–262, 1110 Stat. 1377, 1378 (codified as amended at 38 U.S.C. § 1710(a)(4) (1996)).

The Secretary argues that despite the phrase "*shall* furnish hospital care," this statute is not mandatory. 38 U.S.C. § 1710(a)(1) and (2) (emphasis added). However, in the statute itself Congress specifically distinguished between the Secretary's mandatory obligation to provide hospital care and his discretion to provide nursing home care to veterans. The first sentence of section 1710 uses the term "shall" pertaining to hospital care and the term "may" pertaining to nursing home care. *See id.* The Court finds that the plain meaning of the statute is clear and that a veteran who meets the requirements of section 1710(a)(1) "shall" be provided hospital care by the Secretary. As a result, it is not necessary to examine the legislative history on this point. *See Gardner v. Brown,* 5 F.3d 1456, 1458 (Fed.Cir.1993), *aff'd,* 513 U.S. 115, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994) ("The starting point in interpreting a statute is its language, for 'if the intent of Congress is clear, that is the end of the matter.'"); 2A N. SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION § 46.01 (5th ed.1992).

This appellant's eligibility is determined by reference to 38 U.S.C. § 1710(a)(2)(G), which requires the Secretary to furnish hospital care to a veteran for a non-service-connected disability if the veteran is unable to defray the expenses of necessary care. This determination is made by following the criteria set forth in 38 U.S.C. § 1722, which provides that a veteran shall be considered to be unable to defray expenses of necessary care if the veteran (1) is eligible for medical assistance under the Social Security Act, (2) is in receipt of a non-service-connected pension, or (3) has an annual income less than the applicable income threshold. *See* 38 U.S.C. § 1722(a) and (b). The appellant's spouse has stated that the determination was made by VA that the appellant was unable to defray the cost of the medical care based on his limited income (R. at 62), but the record contains no documentation on this issue. Nevertheless, for the purpose of discussing whether the appellant is entitled to any remedy, the Court will assume that he met the financial criteria of 38 U.S.C. § 1722, and that he was eligible to receive hospital care pursuant to § 1710(a)(2)(G).

■ Although the appellant may be eligible for hospital care under § 1710, that section does not contain any provision which would authorize the Secretary to provide reimbursement to a veteran for services rendered at a non-VA facility. *See Malone v. Gober,* 10 Vet.App. 539, 543 (1997). "[T]he payment of money from the [Federal] Treasury must be authorized by a statute." *Office of Personnel Management v. Richmond,* 496 U.S. 414, 424, 110 S.Ct. 2465, 2471, 110 L.Ed.2d 387 (1990). Moreover, "[a]n officer or employee of the United States Government ... may not ... make or authorize an expenditure or obligation exceeding an amount available in an appropriation or fund for the expenditure or obligation." 31 U.S.C. § 1341(a); *see also* 31 U.S.C. § 1350 (providing for criminal penalties for the violation of § 1341(a)). Thus, given this absence of specific statutory authority, there is no action by the Secretary which this Court could "compel" as "unlawfully withheld." 38 U.S.C. § 7261(a)(2). As this Court recently concluded in *Malone,* "Congress has not created a reimbursement remedy [under § 1710,] and this Court lacks the authority to fashion one of its own making under the guise of § 1710 for breach of its mandate." *Malone,* 10 Vet. App. at 543.

The absence in § 1710 of any authority to reimburse stands in stark contrast to 38 U.S.C. § 503, which allows the Secretary to provide equitable relief, "including the payment of monies to any person whom the Secretary determines is equitably entitled to such moneys." In fact, Harold May, Chief of the VA Medical Administration Service who presided over the June 1992 hearing, stated during the hearing that that was the issue that needed to be decided in this matter. R. at 65. The ROA does not contain the hearing officer's decision and, perhaps, that avenue remains open. However, that is a matter between the appellant and the Secretary because, regardless of the Secretary's decision pertaining to relief under 38 U.S.C. § 503, the BVA, and by necessary implica-

tion, this Court, are without jurisdiction to compel or to review the Secretary's exercise of such authority. *See Darrow v. Derwinski,* 2 Vet.App. 303, 306 (1992); *see also* 38 U.S.C. § 511(a). Our conclusions regarding sections 1710 and 503, however, do not end our inquiry.

### C. 38 U.S.C. § 1703

■ Section 1703 of title 38, U.S.Code, provides in pertinent part:

> (a) When Department facilities are not capable of furnishing economical hospital care or medical services ... or are not capable of furnishing the care or services required, the Secretary, as authorized in section 1710 of this title, may contract with non-Department facilities in order to furnish any of the following:

> ...

> (3) Hospital care or medical services for the treatment of medical emergencies which pose a serious threat to the life or health of a veteran receiving medical services in a Department facility or nursing home care under section 1720 of this title until such time following the furnishing of care in the non-Department facility as the veteran can be safely transferred to a Department facility.

38 U.S.C. § 1703(a).

The Secretary has broad authority to contract with "private or public agencies or persons ... for such necessary services (including personal services) as the Secretary may consider practicable." 38 U.S.C. § 513. However, the more narrow language found in 38 U.S.C. § 1703 specifically addresses the Secretary's authority to contract with non-VA facilities for the furnishing of hospital care in certain circumstances to those eligible under section 1710. *See* 38 U.S.C. § 1703. That is the issue in this case and "a more specific statute will be given precedence over a more general one...." *Busic v. United States,* 446 U.S. 398, 406, 100 S.Ct. 1747, 1753, 64 L.Ed.2d 381 (1980). Therefore, if the appellant is to have any relief based upon a theory of contract, it must arise under § 1703 and not, as the appellant contends alternatively in his reply brief, under § 513.

The Secretary requires that, in order to be admitted to a non-VA facility at VA expense, such an admission must be authorized in advance by VA (or within 72 hours in the case of an emergency). *See* 38 C.F.R. § 17.54. Moreover, the Secretary has interpreted § 1703 to allow for "individual authorizations" as well as contracts with non-VA facilities. *See* 38 C.F.R. § 17.52(a). Although § 1703 does not provide for payment or reimbursement directly to a veteran, it could be that an "individual authorization" is premised upon a theory that a veteran is a third-party beneficiary to a § 1703 contract and, thus, is entitled to reimbursement under general contract law. *See* 38 C.F.R. § 17.123 (claim for reimbursement of services not previously authorized may be made by the veteran who received the services or the facility which provided the services); *see also Malone,* 10 Vet.App. at 543. However, because the appellant in this case cannot prevail under § 1703 for other reasons, we need not address the extent of any remedies that might be available under that section and its implementing regulations.

The Board in this case found that there had been no prior authorization under 38 C.F.R. 17.54 and therefore 38 U.S.C. § 1703 was not applicable to the appellant. With respect to whether there was prior authorization, the Court concludes that the ROA is simply too incomplete to permit judicial review of this issue. *See Hennessey v. Brown,* 7 Vet.App. 143, 147 (1994). According to the March 14, 1990, Report of Contact form executed by Mr. Sawyer at the VAMC, Dr. Stephanian, a surgeon at the VAMC, instructed the appellant "to go to HCMC and the VA would pay for it." R. at 21. However, there is no statement from Dr. Stephanian in the ROA reflecting what specifically he said and to whom he said it. Moreover, the same Report of Contact shows that Mr. Sawyer told the "doctor" that VA would not cover the bill unless the appellant came to the VA facility for an examination, but it is not clear from the report whether Mr. Sawyer made this statement to Dr. Behrens at Northfield Hospital or Dr. Stephanian at the VAMC, or to both doctors. Finally, Dr. Stephanian's advice to the appellant to go to HCMC to have his finger repaired may not

be the specific type of authorization contemplated by 38 C.F.R. § 17.54. *See Smith, supra.* Noting that a VAMC was the AOJ, the Veterans Health Administration may not be as experienced in processing and adjudicating claims as the Veterans Benefits Administration, but this case illustrates the need for a full and complete record in order to facilitate adjudication of a claim, as well as review of that adjudication by the Board and this Court.

However, even if we were to assume that there was prior authorization by virtue of Dr. Stephanian's statement or, under 38 C.F.R. § 17.54, that a qualifying telephone call was made within 72 hours after an emergency admittance, such authorization would be of no consequence because this veteran still would not be entitled to reimbursement under 38 U.S.C. § 1703. Section 1703 permits the Secretary to *contract* with non-VA facilities in certain circumstances. *See* 38 U.S.C. § 1703(a)(1)-(8). While the record does reflect some communication between the VAMC and Northfield Hospital prior to treatment, there is no such record of communication between the non-VA facility which actually furnished the hospital care, HCMC, and the VAMC. Even if there were a contract between VAMC and Northfield Hospital, there is nothing in the record to indicate that any such contract was assigned to HCMC. Therefore, there can be no "contract" between HCMC and the VA which the Court could enforce under 38 U.S.C. § 1703.

In addition, the only provision potentially applicable to the appellant is § 1703(a)(3), which permits a contract with a non-VA facility for the furnishing of "[h]ospital care or medical services for the treatment of medical emergencies which pose a serious threat to the life or health of a veteran *receiving medical services in a Department facility.*" 38 U.S.C. 1703(a)(3) (emphasis added). The statute places determinative emphasis on "receiving" medical services, not on the "provision" of medical services. This statutory interpretation is reinforced by examination of the implementing regulation, which contemplates "transfer to a public or private hospital which has the necessary staff or equipment." 38 C.F.R. § 17.52(a)(3). In order to

"transfer" to a non-VA facility, a patient already would need to be in a VA facility. Therefore, although Dr. Stephanian was in a VA facility at the time he allegedly instructed the appellant to go the HCMC, the appellant was neither in a VA facility nor "receiving medical services in a [VA] facility" prior to being admitted to HCMC. *See Malone,* 10 Vet.App. at 543–44. Since resolution of this issue requires the Court to review the Board's factual findings, the Court reviews the Board's decision under the clearly erroneous standard of review. *See Gilbert v. Derwinski,* 1 Vet.App. 49, 52–53 (1990). The Court concludes that there is a plausible basis in the record for the Board's determination that the appellant did not meet the criteria for enforcement of a contract under 38 U.S.C. § 1703.

## IV. CONCLUSION

The facts surrounding the appellant's accident and the subsequent sequence of events do not fit into the statutory scheme established by Congress for the payment of or reimbursement for expenses incurred at a non-VA facility. To the extent that some may see this as a legislative void, as we noted in *Malone, supra,* that is a matter which would have to be addressed in the first instance by Congress rather than this Court. Upon consideration of the record, the pleadings of the parties, and the arguments advanced during oral argument, the Court concludes that the appellant has not demonstrated that the Board committed either factual or legal error which would warrant reversal or remand. *Gilbert, supra; see also Anderson v. City of Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *Danville Plywood Corp. v. United States,* 899 F.2d 3 (Fed.Cir.1990). The Court also is satisfied that the BVA decision meets the "reasons or bases" requirements of 38 U.S.C. § 7104(d)(1), and the benefit of the doubt doctrine of 38 U.S.C. § 5107(b). *See Gilbert, supra.* Accordingly, the August 19, 1994, decision of the Board of Veterans' Appeals is AFFIRMED.