# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 96-114

ALFRED L. BROWN, APPELLANT,

V.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Remand from the U.S. Court of Appeals for the Federal Circuit

(Decided    February 12, 2002   )

*Gary L. Beaver*, of Greensboro, North Carolina, was on the pleadings for the appellant.

*Tim S. McClain*, General Counsel; *Ron Garvin*, Assistant General Counsel; *Carolyn F. Washington*, Deputy Assistant General Counsel; and *Ralph G. Davis*, all of Washington, D.C., were on the pleadings for the appellee.

Before KRAMER, *Chief Judge*, and STEINBERG and GREENE, *Judges*.

KRAMER, *Chief Judge*:   The appellant, Alfred L. Brown, appeals through counsel a February 8, 1996, decision of the Board of Veterans' Appeals (BVA or Board) that denied a claim that clear and unmistakable error (CUE) was committed when his disability rating of 100% was reduced to 70%, effective July 20, 1946.  Record (R.) at 64.  This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a).  The parties have filed briefs and pleadings.  For the reasons that follow, the Court will affirm the BVA decision.

## I. FACTS

The appellant served on active duty in the U.S. Army from May 1944 to July 1945.  R. at 140.  His service medical records (SMRs) show that on March 6, 1945, he was severely wounded in combat when an explosive shell fragment penetrated his right thorax and abdomen, perforating his diaphragm and liver, destroying his right adrenal gland, lacerating his right kidney, and fracturing

his right seventh rib. R. at 83-86, 92, 100, 105, 123. By March 17, 1945, his recuperation course was satisfactory, but he had developed an acute abscess near his diaphragm and his convalescence was expected to be prolonged. R. at 111. In July 1945, the appellant's wound was completely healed but he was still being treated for the abscess, and he was given a medical discharge from the service later that month. R. at 121, 128, 134-35, 140, 142. The appellant shortly thereafter filed a claim with a VA regional office (RO) for pension or compensation. R. at 145-48. In a July 1945 decision, the RO awarded, effective the day after his discharge, a 100% disability rating for that chest and abdomen shell wound (R. at 154, 158-59) pursuant to Extension No. 6 - Schedule for Rating Disabilities, 1933, which provided temporary ratings (for a total of one year) for certain disabilities, including a 100% rating for recent, unhealed injuries with continued infections (R. at 1321-23).

In July 1946, the appellant had surgery at a VA hospital for a hernia in the right groin area. R. at 172, 181. The record includes a VA medical report of an examination that was performed at that time. R. at 183-89. That report included no discussion of the appellant's kidney or adrenal condition and noted that "[m]uscular development is good [and t]here is no evidence of atrophy of muscles." R. at 187. In October 1946, VA apparently canceled a request for physical examination regarding the appellant's chest and abdomen wounds. R. at 175. Several days later, VA notified the appellant that it had authorized a medical examination and that the appellant would be notified of the date and time at a later date (R. at 179), but there is no evidence that such an examination was completed. In a February 12, 1947, decision, the RO granted the appellant service connection for residuals of the penetrating shell wound, including injuries to the pleural cavity, liver, and muscle group (MG) 21, and assigned, as of July 20, 1946, ratings of 40%, 30%, and 20%, respectively. R. at 192. The appellant's combined rating was 70% at that time. *Id*.

A February 12, 1947, VA request for physical examination contained several handwritten notations, including one to "proceed . . . 12-7-50." R. at 194. According to an August 1947 VA hospital final summary report, the appellant in July 1947 was again treated for a right groin hernia. R. at 206-07. That report noted that the appellant had had multiple shrapnel wounds of the chest and abdomen, with removal of the ninth rib and penetration wounds to the right lung, liver, kidney, and diaphragm. R. at 206. An August 1947 RO decision stated that the hospitalization report "does not alter current rating which is confirmed and continued." R. at 209. The appellant was apparently

2

hospitalized in March 1949 due to the shrapnel wound residuals. R. at 229, 239. In January 1951, the RO again confirmed and continued the 70% combined rating based on a December 1950 report of a non-VA medical examination. R. at 255-58. A January 1951 VA request for physical examination was canceled as of June 1951. R. at 268.

In April 1981, the appellant stated that he had not been given a competent and complete medical examination and requested a 100% rating. R. at 467. In an August 1981 RO decision, the appellant was awarded service connection for his kidney and adrenal gland injuries and was assigned noncompensable ratings for both, effective May 1981. R. at 500-01. In February 1982, the RO granted service connection for three additional residuals of the shell wound, including injuries to the right adrenal gland, right kidney, and MG 19. R. at 544-49. The RO assigned a rating of 10% for the MG 19 injury, effective September 1980. The RO also determined that the kidney and adrenal injuries were noncompensable, effective May 1981, based on analogy to 38 C.F.R. § 4.115b, Diagnostic Code (DC) 7502 (chronic nephritis) (1981), and 38 C.F.R. § 4.119, DC 7910 (hyperadrenia) (1981), respectively. R. at 549. (Chronic nephritis is "active and slowly progressive parenchymal [(meaning pertaining to "the essential elements of the organ")] renal disease." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1108, 1234 (28th ed. 1994) [hereinafter DORLAND'S]. Hyperadrenia is also known as hyperadrenalism, which is "abnormally increased secretion of adrenal hormones." DORLAND'S at 791.)

In a May 1985 decision, in response to the appellant's questioning of the effective dates assigned in 1982 (R. at 795), the RO assigned an earlier effective date of July 20, 1946 (the date that the appellant's temporary 100% rating had expired), for the service-connected adrenal gland, kidney, and MG 19 injuries. The RO stated that its basis for assigning that earlier date was that it should have awarded service connection for those residuals in 1947. R. at 800. The RO then stated that, because the appellant's combined rating would have been 70% from 1947 to date in any event, "there is no change in monetary benefits." R. at 801. The appellant did not appeal this decision.

In March 1991, the appellant filed a statement in which he argued that had the RO in 1947 considered all of his service-related injuries he would have been rated at 100%. R. at 1002-03. In a September 1991 BVA decision, the Board noted that the appellant had not properly developed for appellate review his claims of CUE (as to the RO decision that had not considered all of his service-

3

related injuries); the Board then referred those CUE claims to the RO for appropriate consideration. R. at 1021, 1031-32. In November 1991, the RO, taking into consideration the appellant's March 1991 statement, denied a CUE claim as to a denial of a rating of total disability based on individual unemployability. R. at 1038-42. In April 1993, the Board (1) characterized the claim as one for CUE in the 1947 RO decision that had reduced the appellant's rating from 100% to 70% and (2) denied that CUE claim. R. at 1125. The BVA Deputy Vice Chairman granted reconsideration of that BVA decision (R. at 1157-58), and in February 1994, the Board determined that, although the RO had erred in 1947 in not applying the 1945 edition of the Veterans' Administration (now the Department of Veterans Affairs) *Schedule for Rating Disabilities* [hereinafter 1945 Rating Schedule], an application of that schedule would not have changed the appellant's 70% combined rating (R. at 1168-70). The appellant appealed to this Court, which in 1995 granted a joint motion to vacate the February 1994 BVA decision and remand the claim. *Brown v. Brown*, U.S. Vet. App. No. 94-153 (Apr. 7, 1995) (order).

In the February 1996 BVA decision on appeal, the Board denied the CUE claims. R. at 64. The appellant appealed to this Court, and on February 20, 1998, by single-judge memorandum decision, this Court, in reliance on *Dittrich v. West*, 163 F.3d 1349 (Fed. Cir. 1998), and *Donovan v. West*, 158 F.3d 1377 (Fed. Cir. 1998), affirmed that BVA decision on the ground, inter alia, that the 1947 and 1985 RO decisions had been subsumed by later BVA decisions. *Brown v. West*, U.S. Vet. App. No. 96-114 (Feb. 20, 1998). The appellant appealed to the U.S. Court of Appeals for the Federal Circuit (Federal Circuit), which vacated this Court's decision and remanded the case for consideration of "whether the RO correctly rated [the appellant's] injuries under the 1945 rating schedule," *Brown (Alfred) v. West*, 203 F.3d 1378, 1381-82 (Fed. Cir. 2000). After the case was returned to this Court for disposition, the appellant, on January 14, 2002, filed a motion to expedite the Court's decision in this case.

## II. ANALYSIS

Preliminarily, the Court notes that by holding that later BVA decisions did not subsume the 1947 and 1985 RO decisions, the Federal Circuit has clarified that the present state of the case law is that a later BVA decision's delayed subsuming of an RO decision occurs only where the Board

decided the same issue that the RO decided and where the RO decision and BVA review were based on the same evidentiary record. *Brown*, 203 F.3d at 1381-82; *see also Dittrich* and *Donovan*, both *supra*. The Court also notes that the Federal Circuit's February 18, 2000, opinion did not vacate entirely this Court's February 20, 1998, memorandum decision but only that part of this Court's decision that erred "in holding that [the appellant] is foreclosed from raising [the claims as to whether the RO correctly rated his injuries under the 1945 Rating Schedule] in the current proceeding," *Brown*, 203 F.3d at 1382. The Court will therefore reconsider those CUE claims only.

A prior RO decision must be reversed or revised where evidence establishes CUE. 38 U.S.C. § 5109A; 38 C.F.R. § 3.105(a) (2001). For CUE to exist, either (1) the correct facts in or constructively in the record were not before the adjudicator or (2) the statutory or regulatory provisions in effect at the time of the decision were incorrectly applied. *See Damrel v. Brown*, 6 Vet.App. 242, 245 (1994); *Bell v. Derwinski*, 2 Vet.App. 611, 612-13 (1992) (per curiam order). In addition, "the error must be 'undebatable' and of the sort 'which, had it not been made, would have manifestly changed the outcome at the time it was made.'" *Damrel*, 6 Vet.App. at 245 (quoting *Russell v. Principi*, 3 Vet.App. 310, 313-14 (1992) (en banc)); *see also Bustos v. West*, 179 F.3d 1378, 1380 (Fed. Cir. 1999) (expressly adopting the "manifestly changed the outcome" language in *Russell*, *supra*). "In order for there to be a valid claim of [CUE], . . . [t]he claimant, in short, must assert more than a disagreement as to how the facts were weighed or evaluated." *Russell*, 3 Vet.App. at 313. That is because, "even where the premise of error is accepted, if it is not absolutely clear that a different result would have ensued, the error complained of cannot be, ipso facto, clear and unmistakable." *Fugo v. Brown*, 6 Vet.App. 40, 43-44 (1993). On appeal of a BVA determination that there was no CUE in a prior final RO decision, the Court's review is limited to determining whether the Board's conclusion is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" (38 U.S.C. § 7261(a)(3)(A)) and whether it is supported by an adequate statement of "reasons or bases" (38 U.S.C. § 7104(d)(1)). *See Eddy v. Brown*, 9 Vet.App. 52, 57 (1996); *Damrel*, 6 Vet.App. at 246; *Russell*, 3 Vet.App. at 315; *see also Beyrle v. Brown*, 9 Vet.App. 377, 381-84 (1996); *Mason v. Brown*, 8 Vet.App. 44, 52-53 (1995).

In essence, the appellant contends that he is entitled to a rating above 70%, effective July 1946, on the ground that CUE was committed in the May 1985 RO decision, which had determined

that the RO had committed error in the February 1947 decision (by not awarding service connection for the appellant's kidney, adrenal-gland, and MG 19 disabilities) but had determined that the error did not affect the appellant's 70% combined rating and his monthly monetary benefits. The CUE claims challenge the 1985 RO decision's application of the 1945 Rating Schedule to the appellant's residuals of the right adrenal gland, right kidney, and MG 19 injuries at the time of the 1947 RO decision. In light of that fact, the citations to the DCs in the following analysis are to that 1945 Rating Schedule (R. at 1245-78). In addition, any reference to the 1985 RO decision denotes the 1947 RO decision as amended by the 1985 RO decision.

## A. Right Adrenal Gland

The appellant asserts that in 1985 the RO erred in applying DC 7910 (hyperadrenia) (R. at 1277) as analogous to loss of an adrenal gland, the appellant's injury, because loss of an adrenal gland could not reasonably create excess functioning of that gland. June 2, 2000, Brief (Br.) at 16-18. Based on that assertion, the appellant argues that the Board also erred in applying DC 7910 and instead should have applied DC 7911 (hypo-adrenia or Addison's disease) (R. at 1275) or DC 7500 (removal of one kidney) (R. at 1273), which would have increased the appellant's combined rating. June 2, 2000, Br. at 16. (Hypoadrenia is also known as hypoadrenalism, which is "abnormally diminished activity of the adrenal gland, as in Addison's disease." DORLAND'S at 803.) The Court notes that it appears that the appellant has raised this argument for the first time on appeal. *See Crippen v. Brown*, 9 Vet.App. 412, 418 (1996). However, even if he had raised this issue to the Board, for the following reasons he could not prevail.

In the February 1996 BVA decision, the Board concluded that the application of DC 7911, rather than DC 7910, would not have made a difference in the outcome of the decision because there was no evidence that the appellant in 1947 had symptoms of reduced functioning of the adrenal gland. R. at 45. The Court agrees with the Board on this point. Hence, the Court concludes that in determining that the application of DC 7911 would not have manifestly changed the outcome of the decision, the Board was not arbitrary.

Although the outcome of the case would have been different if the Board had applied DC 7500, the record on appeal and the 1945 Rating Schedule do not support the conclusion that in its 1996 decision, the Board's application of DC 7911 instead of DC 7500 was arbitrary. Under the

6

1945 Rating Schedule, the application of analogous ratings is governed by General Policy in Rating Disability § 20, which permits analogous rating where the "functions affected . . . and symptomatology are closely analogous" (R. at 1252). Under § 20, the choice of DC 7500, specific to the loss of a kidney, is not an obvious or possibly even acceptable choice because the functions of the kidney and the adrenal gland are not the same and the symptomatology of decreased functioning due to loss of the adrenal gland is not "closely analogous" to the symptomatology of decreased function due to loss of the kidney. *See* DORLAND'S at 88, 102, 478, 529, 607, 795, 803, 810, 882, 1175, 1778; WEBSTER'S MEDICAL DESK DICTIONARY 14, 216 (1986). Indeed, the Court notes that the only relationship between the kidney and the adrenal gland is location, not function. On the other hand, DC 7911 is based on the symptomatology that result from the diminished functioning of the adrenal glands. The Court concludes that pursuant to § 20 the Board did not act arbitrarily when it analogized the loss of an adrenal gland to the diminished functioning of the same organ pursuant to DC 7911.

### B. Muscle Group 19

The appellant asserts that the RO committed CUE as to the 1985 RO decision by not affording him an examination as to his MG 19 injury. June 2, 2000, Br. at 22. The Court notes that in 1982 the RO rated the appellant's MG 19 residuals 10% disabling (R. at 549), and in 1985, the RO made that rating effective as of July 1946 (R. at 801). The only relevant medical evidence of record at the time of the 1947 RO decision was a July 1946 report that stated that the appellant's "[m]uscular development is good [and t]here is no evidence of atrophy of muscles." R. at 187. Assuming that an adequate examination was required but not provided in this case, the appellant has not shown that an examination would have provided the necessary medical evidence to change manifestly the outcome of the 1985 RO decision. *Russell*, 3 Vet.App. at 313-14. In any event, the Court notes that the failure in any duty to assist, such as to provide an adequate medical examination, cannot constitute a basis for CUE. *See Hazan v. Gober*, 10 Vet.App. 511, 522-23 (1997) (following *Caffrey v. Brown*, 6 Vet.App. 377, 383-84 (1994)). The Court makes no determination as to any claim of "grave procedural error" as defined by the Federal Circuit in *Hayre v. West*, 188 F.3d 1327 (Fed. Cir. 1999), *on remand*, *Hayre v. Principi*, 15 Vet.App. 48 (2001), *appeal docketed*, No. 01-7086 (Fed. Cir. July 16, 2001), because no such claim has been presented here or to the Board.

7

C. Right Kidney

The appellant contends that the Board in its decision on appeal erred when it applied 38 C.F.R. § 4.31 (1994) and found that the RO in 1985 did not err in concluding that a noncompensable rating was appropriate for the appellant's right-kidney residuals. June 2, 2000, Br. at 25. He argues that he should have been assigned a 10% rating under DC 7502 (chronic nephritis) (R. at 1273), which provides a minimum rating of 10%, and that that rating would have increased his combined rating. June 2, 2000, Br. at 26.

The Board in its February 1996 decision stated:

> A current regulation allows the assignment of a zero percent rating when the requirements of a compensable rating are not met and a zero percent rating is not provided under the pertinent diagnostic code. 38 C.F.R. § 4.31 (1994). It appears that this provision was not part of the 1945 Rating Schedule in February 1947. However, since none of the criteria for a compensable rating under [DC] 7502 appears to have been met based on the evidence before the RO in February 1947, it was reasonable for the RO to assign a noncompensable rating.

R. at 45. Although the Board does not appear to have applied specifically § 4.31 to this claim, the Board's decision was based on the idea that a noncompensable rating was available but included no legal authority for such a determination. R. at 45. The version of § 4.31 cited to by the Board provides:

> **§ 4.31 Zero percent evaluations.**
> In every instance where the schedule does not provide a zero percent evaluation for a diagnostic code, a zero percent evaluation shall be assigned when the requirements for a compensable evaluation are not met.

38 C.F.R. § 4.31 (1994).

As previously noted, "a determination that there was CUE must be based on the record and law that existed at the time of the prior adjudication in question." *Damrel*, 6 Vet.App. at 245. Regulatory § 4.31 (1994) does not appear to have a direct antecedent in the 1945 Rating Schedule. Nonetheless, the following regulation was applicable to the appellant's claim in 1947:

> § 2.1158 Rating of noncompensable disabilities under 1925 and 1933 schedules. * * *
> (b) For the purposes of the 1933 and 1945 schedules, a disability under any diagnostic classification which does not meet the minimum rating schedule standard under that classification will be rated as no percent, except for purposes of Civil

8

Service preference, in which event an evaluation of less than ten percent may be made.

38 C.F.R. § 2.1158(b) (1946 Suppl.). This 1947 regulation provides, as does § 4.31 (1994), for a noncompensable rating where the disability does not meet the minimum criteria of the applicable DC. The appellant has not argued that in 1947 his right-kidney condition satisfied the minimum criteria for a 10% rating under DC 7502. Therefore, the Court concludes that, although the Board's reasoning was flawed, the Board's ultimate determination that there was no CUE as to the right kidney noncompensable rating was not arbitrary.

## D. Miscellaneous

The Court notes that neither the Board nor this Court can provide equitable relief. *See Moffitt v. Brown*, 10 Vet.App. 214, 225 (1997) ("Court is not a court of equity and cannot provide equitable relief" (citing *Harvey v. Brown*, 6 Vet.App. 416, 425 (1994))); *cf. Suttmann v. Brown*, 5 Vet.App. 127, 138 (1993) (holding that BVA is without jurisdiction to review Secretary's exercise of 38 U.S.C. § 503(a) equitable-relief discretion). However, the appellant is free to apply to the Secretary for the exercise of his equitable-relief discretionary authority under 38 U.S.C. § 503. *See* 38 C.F.R. § 2.7 (2001); *Taylor v. West*, 11 Vet.App. 436, 440-41 (1998); *Zimick v. West*, 11 Vet.App. 45, 50-51 (1998); *Moffitt*, 10 Vet.App. at 225 (citing, inter alia, *Darrow v. Derwinski*, 2 Vet.App. 303, 304-06 (1992) (holding that section 503(a) authorizes Secretary to grant relief that is equitable in nature as distinct from Secretary's authority, exercised through Board, to determine entitlement to benefits under law)); *Erspamer v. Brown*, 9 Vet.App. 507, 512 (1996) (holding that, because authority to grant equitable relief under section 503 is discretionary with Secretary, that authority is not appropriate ground for Court to use as basis for remand to Board).

## III. CONCLUSION

Upon consideration of the foregoing, the Court holds that the BVA decision is not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 38 U.S.C. § 7261(a)(3)(A). The Board's statement of reasons or bases, taken as a whole, showed adequate consideration of the law and facts applicable to these CUE claims. *See Damrel*, 6 Vet.App. at 245; *Russell*, 3 Vet.App. at 313-14. Accordingly, the February 8, 1996, BVA decision is AFFIRMED.

As to the appellant's January 14, 2002, motion to expedite the Court's decision, the Court denies that motion as moot.