# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 96-114

Alfred L. Brown, Appellant,

v.

Anthony J. Principi,
Secretary of Veterans Affairs, Appellee.

Before KRAMER, *Chief Judge*, and STEINBERG and GREENE, *Judges*.

## O R D E R

The appellant, Alfred L. Brown, appealed through counsel a February 8, 1996, decision of the Board of Veterans' Appeals (BVA or Board) that denied a claim of clear and unmistakable error (CUE). On February 20, 1998, the Court issued a single-judge memorandum decision that affirmed the BVA decision. *Brown v. West*, No. 96-114, 1998 WL 89120, at *1 (Vet. App. Feb. 20, 1998). The appellant appealed, and the U.S. Court of Appeals for the Federal Circuit issued an opinion vacating this Court's judgment and remanding the case for further proceedings. *Brown v. West*, 203 F.3d 1378 (Fed. Cir. 2000). On February 12, 2002, the Court issued an opinion affirming the February 1996 BVA decision. *Brown v. Principi*, 15 Vet.App. 421, 428 (2002). On March 1, 2002, the appellant filed a motion for reconsideration. On October 15, 2002, the appellant's counsel filed a notice that the appellant had died on September 11, 2002. The appellant's counsel requests, in part, that the Court dismiss this appeal for lack of jurisdiction on the ground that the appellant's death moots the appeal.

An appellant's disability compensation claims, including claims of CUE, "die[ ] with him." *Landicho v. Brown*, 7 Vet.App. 42, 52 (1994); *see Haines v. West*, 154 F.3d 1298, 1300-02 (Fed. Cir. 1998). This Court held in *Landicho* that, where the appellant is a veteran who dies while the Board's denial of such claims is pending here on appeal, the appropriate remedy is to vacate the Board decision from which the appeal was taken and to dismiss the appeal. *Landicho*, 7 Vet.App. at 53-54; *see Zevalkink v. Brown*, 102 F.3d 1236, 1243-44 (Fed. Cir.1996) (expressly agreeing with this Court's *Landicho* holding).

The vacatur of the BVA decision ensures that the Board decision and the underlying VA regional office (RO) decision(s) will have no preclusive effect in the adjudication of any accrued-benefits claims derived from the veteran's entitlements. It also nullifies the previous RO merits adjudication because that decision was subsumed in the Board decision. *See Yoma v. Brown*, 8 Vet.App. 298, 299 (1995) (per curiam order) (relying on *Robinette v. Brown*, 8 Vet.App. 69, 80 (1995)); *see also Hudgins v. Brown*, 8 Vet.App. 365, 368 (1995) (per curiam order). Because this appeal has become moot by virtue of the appellant's death, the Court's February 1998 memorandum

decision and February 2002 opinion will be withdrawn, the Court will issue no opinion in this matter, and the appeal will be dismissed. *See Haines*, 154 F.3d at 1300-02; *Landicho*, 7 Vet.App. at 53-54.

Upon consideration of the foregoing, it is

ORDERED that the appellant's motion for reconsideration is denied as moot. It is further

ORDERED that the Court's February 20, 1998, memorandum decision and February 12, 2002, opinion are withdrawn. It is further

ORDERED that the February 8, 1996, BVA decision is VACATED. It is further

ORDERED that this appeal is DISMISSED for lack of jurisdiction.

DATED:      November 19, 2002                    PER CURIAM.

KRAMER, *Chief Judge*, concurring: I concur in the disposition of this case and write separately to offer my individual views on the appellant's underlying claim. In his motion for reconsideration, the appellant had argued, inter alia, that a VA regional office (RO) in 1947 should have rated his service-connected injury to Muscle Group (MG) 19 as 50% disabling based on the requirements of the Note on page 44 [hereinafter Note] of the 1945 edition of the VA *Schedule for Rating Disabilities* [hereinafter 1945 Rating Schedule] (Record (R.) at 1266). Motion at 1-5.

The appellant served on active duty in the U.S. Army from May 1944 to July 1945, with combat service in the European Theater of World War II. R. at 140. As more fully explained in the Court's February 2002 opinion, *Brown v. Principi*, 15 Vet.App. 421, 422-23 (2002), the appellant was severely wounded by an explosive shell fragment that penetrated through the right side of his body and lodged in the back of the chest wall. R. at 135. On the way through his body, the shell fragment created a compound comminuted fracture of his seventh rib and damaged his abdomen (MG 19). R. at 123. At his death, the appellant was rated at 10% for MG19, as well as 40% for pleural cavity, 30% for liver, 20% for MG21, 0% for right kidney, and 0% for right adrenal gland injuries, for a combined rating of 70%. R. at 800-02.

Under Diagnostic Code 5319 (R. at 1268), of the 1945 Rating Schedule, a severe disability is rated as 50% disabling. The pertinent portions of the 1945 Rating Schedule provide:

> 17. *Factors to be Considered in the Evaluation of Disabilities Residual to Healed Wounds Involving Muscle Groups Due to Gunshot or Other Trauma*.
>
> . . . .
>
> (4) Severe Disability of Muscles.

2

*Type of injury.*–Through and through or deep penetrating wound due to high velocity missile, or large or multiple low velocity missiles, or explosive effect of high velocity missile, or shattering bone fracture, with extensive debridement or prolonged infection and sloughing of soft parts, intermuscular binding and cicatrization.

*History and complaint.*–As under moderately severe above, in aggravated form.

*Objective findings.*–Extensive ragged, depressed, and adherent scars of skin so situated as to indicate wide damage to muscle groups in track of missile. X-ray may show minute multiple scattered foreign bodies indicating spread of intermuscular trauma and explosive effect of missile. Palpation shows moderate or extensive loss of deep fascia or of muscle substance. Soft or flabby muscles in wound area. Muscles do not swell and harden normally in contraction. Tests of strength or endurance compared with the sound side or of coordinated movements show positive evidence of severe impairment of function. In electrical tests, reaction of degeneration is not present but a diminished excitability to Faradism compared with the sound side may be present. Visible or measured atrophy may or may not be present. Adaptive contraction of opposing group of muscles, if present, indicates severity. Adhesion of scar to one of the long bones, scapula, pelvic bones, sacrum or vertebrae, with epithelial sealing over the bones without true skin covering, in an area where bone is normally protected by muscle, indicates the severe type. Atrophy of muscle groups not included in the track of the missile, particularly of the trapezius and serratus in wounds in the shoulder girdle (traumatic muscular dystrophy), and induration and atrophy of an entire muscle following simple piercing by a projectile (progressive sclerosing myositis), may be included in the severe group if there is sufficient evidence of severe disability.

1945 Rating Schedule, § 17(4); R. at 1263-65.

Note–In rating disability from injuries of the musculoskeletal system, attention is to be given first to the deeper structures injured, bones, joints, and nerves. *A compound comminuted fracture, for example, with muscle damage from the missile, establishes severe muscle injury*, and there may be additional disability from malunion of bone, ankylosis, etc. The location of foreign bodies may establish the extent of penetration and consequent damage. It may not be too readily assumed that only one muscle, or group of muscles is damaged. A through and through injury, with muscle damage, is always at least a moderate injury, for each group of muscles damaged.

1945 Rating Schedule, Muscle Injuries, Note (emphasis added); R. at 1266-67.

The Note provides a special rule for rating muscle injuries as severe where there is a compound comminuted fracture from the same missile that damaged the muscle. There is nothing in section 17 (R. at 1263-65) that appears to contradict that special rule. Although under section

17(4) (rating muscle injuries as severe due to shattering bone fracture), a veteran would apparently need symptomatology (such as sloughing of soft parts and intermuscular binding) beyond what is required by the Note, not all shattering or comminuted bone fractures are compound fractures, which require that the bone be open to the air in addition to having been shattered. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 660-61 (28th ed. 1994). Thus, where the Note's criteria are met, it does not appear also to be necessary to meet the criteria of section 17(4).

A prior RO decision must be reversed or revised where evidence establishes clear and unmistakable error (CUE). 38 U.S.C. § 5109A; 38 C.F.R. § 3.105(a) (2001). For CUE to exist, either (1) the correct facts in or constructively in the record were not before the adjudicator or (2) the statutory or regulatory provisions in effect at the time of the decision were incorrectly applied. *See Damrel v. Brown*, 6 Vet.App. 242, 245 (1994); *Bell v. Derwinski*, 2 Vet.App. 611, 612-13 (1992) (per curiam order). In addition, "the error must be 'undebatable' and of the sort 'which, had it not been made, would have manifestly changed the outcome at the time it was made.'" *Damrel*, 6 Vet.App. at 245 (quoting *Russell v. Principi*, 3 Vet.App. 310, 313-14 (1992) (en banc)); *see also Bustos v. West*, 179 F.3d 1378, 1380 (Fed. Cir. 1999) (expressly adopting the "manifestly changed the outcome" language in *Russell*, *supra*). On appeal of a Board of Veterans' Appeals (Board or BVA) determination that there was no CUE in a prior final RO decision, the Court's review is limited to determining whether the Board's conclusion is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" (38 U.S.C. § 7261(a)(3)(A)) and whether it is supported by an adequate statement of "reasons or bases" (38 U.S.C. § 7104(d)(1)). *See Eddy v. Brown*, 9 Vet.App. 52, 57 (1996); *Damrel*, 6 Vet.App. at 246; *Russell*, 3 Vet.App. at 315.

Based on the Note, it appears that the RO erred in failing to award a 50% rating for the MG19 injury. Moreover, the addition of a 50% rating for MG19 (to replace the 10%) to the appellant's three other compensable ratings would apparently have produced a combined rating of 80%, 38 C.F.R. § 4.25, an increase from the appellant's combined rating of 70%, thus manifestly changing the outcome of the RO decision. Under this analysis, the Board's determination that there was no CUE in the 1947 RO decision (as amended by the 1985 RO decision) would appear to have been "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 38 U.S.C. § 7261(a)(3)(A). Had the appellant not died, I believe that the Court would likely have so held, thereby reversing the February 8, 1996, BVA decision as to the MG19 CUE claim and remanding the matter to the Board for payment of past-due benefits.

In this regard, I note that neither the Board nor this Court can provide equitable relief. *See Moffitt v. Brown*, 10 Vet.App. 214, 225 (1997) ("Court is not a court of equity and cannot provide equitable relief" (citing *Harvey v. Brown*, 6 Vet.App. 416, 425 (1994)); *cf. Suttmann v. Brown*, 5 Vet.App. 127, 138 (1993) (holding that BVA lacks jurisdiction to review Secretary's exercise of 38 U.S.C. § 503(a) equitable-relief discretion). However, the appellant's survivors are free to apply to the Secretary for the exercise of his equitable-relief discretionary authority under 38 U.S.C. § 503. *See* 38 C.F.R. § 2.7 (2001); *Taylor v. West*, 11 Vet.App. 436, 440-41 (1998); *Zimmick v. West*, 11 Vet.App. 45, 50-51 (1998); *Moffit*, 10 Vet.App. at 225 (citing, inter alia, *Darrow v. Derwinski*, 2 Vet.App. 303, 304-06 (1992) (holding that section 503(a) authorizes Secretary to grant relief that

is equitable in nature as distinct from Secretary's authority, exercised through Board, to determine entitlement to benefits under law)); *Erspamer v. Brown*, 9 Vet.App. 507, 512 (1996) (holding that, because authority to grant equitable relief under section 503 is discretionary with Secretary, that authority is not appropriate ground for Court to use as basis for remand to Board).