# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 99-1048

HOLLY P. ANDREWS, APPELLANT,

v.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued May 8, 2002                    Decided   September 12, 2002  )

*Timothy L. Salvatore* and *Jeffrey Wood*, both of York, Pennsylvania, were on the brief for the appellant.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Acting Assistant General Counsel; and *Darryl A. Joe*, Acting Deputy Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before FARLEY, HOLDAWAY, and STEINBERG, *Judges*.

STEINBERG, *Judge*: The appellant, through counsel, seeks review of a September 23, 1998, Board of Veterans' Appeals (Board or BVA) decision that denied an effective date earlier than June 14, 1991, for an award of Department of Veterans Affairs (VA) service connection for a psychiatric disability. Record (R.) at 1-8. The appellant filed a brief asking the Court to apply the doctrine of equitable tolling to the one-year post-separation filing deadline in 38 U.S.C. § 5110(b)(1) and to reverse the Board's denial of an earlier effective date (EED) and remand the matter to the Board for the assignment of an EED. The Secretary filed a brief and a substitute brief asserting that equitable tolling is not appropriate in this case and requesting that the Court affirm the Board decision. The appellant then filed a reply. This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). For the reasons that follow, the Court will affirm the Board decision.

## I. Relevant Background

The appellant served on active duty from November 1973 to November 1976 and from June to August 1980 in the U.S. Army and U.S. Army National Guard. R. at 143-44. She then served in the U.S. Army National Guard from August 1981 to April 1990. R. at 145. Service medical records reflect that, beginning in 1988, she underwent extensive treatment (inpatient and outpatient) for psychiatric illness. R. at 183-84, 190, 348-49, 585-95, 650-54, 707-21. She was admitted to a Brighton, Massachusetts, private hospital for inpatient treatment in January 1988, where she was diagnosed as having and treated for major depression and panic disorder. R. at 650. She underwent treatment at the Brighton Marine Public Health Clinic in the following months and was diagnosed as having borderline personality disorder with histrionic features. R. at 709. She was readmitted to the Brighton hospital for inpatient treatment in October 1988 and was then diagnosed as having borderline personality disorder; she subsequently was transferred to Walter Reed Medical Center in Washington, D.C. R. at 349. Upon her admission there, she was diagnosed as having dysthymia. R. at 184. (Dysthymia is "a mood disorder characterized by depressed feeling (sad, blue, low, down in the dumps) and loss of interest or pleasure in one's usual activities and in which associated symptoms have persisted for more than two years but are not severe enough to meet the criteria for major depression." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 519 (28th ed. 1994).) In November 1988, her treating physician assigned to her a Global Assessment of Functioning (GAF) score of 55 and recommended that she be separated from service (R. at 182) in the U.S. Army National Guard.

Her commanding officer then requested that she undergo a psychiatric evaluation, and the Army examining physician, Dr. Sheridan, diagnosed her as having an Axis I anxiety disorder and an Axis II personality disorder and "strongly recommend[ed] expeditious administrative separation". R. at 346-47. In February 1989, she received orders to remain on Active Guard Reserve status until April 1990 "pending an MEB [(Medical Evaluation Board)]". R. at 529. In March 1990, Dr. Sheridan stated in a document titled "consultation sheet" that the veteran's personality disorder rendered her eligible for administrative separation but was "not compensable". R. at 179, 533. The veteran underwent a psychological evaluation in March 1990 (R. at 628-39) and was discharged from active service in the U.S. Army National Guard during the following month (R. at 145).

From April 1990 to May 1992, she received psychiatric treatment (inpatient and outpatient) at various VA Medical Centers (VAMCs) in Massachusetts. R. at 599-617, 262-94. On May 6, 1991, a VAMC clinician referred her "to social services about general relief, VA . . . or SSI". R. at 286. On May 16, 1991, a VAMC physician noted that the veteran had reported that she was applying for disability benefits but did not specify whether those benefits were VA or SSI benefits. R. at 284. In June 1991, more than one year after her April 1990 discharge, she filed a claim for compensation with a VA regional office (RO) for anxiety and depression. R. at 112-15. She asserted therein that she had begun experiencing both conditions in 1984. R. at 113.

In a July 2, 1991, "discharge summary", following a voluntary hospitalization, a VAMC physician recorded her diagnosis as adjustment disorder, Axis I, and psychosexual disorder, Axis II. R. at 149. On July 16, 1991, the veteran underwent a VA compensation and pension examination. R. at 123-25. The examining physician diagnosed her as having schizoaffective disorder, Axis I, and borderline personality disorder, Axis II. *Ibid*. In October 1992, the VARO granted service connection for dysthymic disorder and assigned a 50% rating, effective June 14, 1991 (the date that the RO had received her claim), for that disability. R. at 358-62. In that decision, the RO denied service connection for her borderline personality disorder, which the RO found to be "a constitutional or developmental abnormality". R. at 361.

Also in October 1992, the veteran filed a claim for a VA rating of total disability based on individual unemployability (TDIU) due to service-connected disability. R. at 364. That same month, she filed a timely Notice of Disagreement (NOD) as to the October 1992 RO decision and expressed disagreement with the 50% rating and the assigned effective date. R. at 374-76. At a May 1993 hearing at the RO, the veteran testified that she did not know, prior to May 1991, that she was eligible for VA benefits. R. at 578. In December 1993, a VA hearing officer issued a decision that assigned a 100% schedular rating for her service-connected psychiatric disability, found her claim for a TDIU rating moot in light of that 100% schedular rating, and denied an EED. R. at 731-33. The veteran then filed a timely NOD as to the denial of an EED. R. at 742. In that NOD, she asserted that VA had failed to advise her that she was eligible for compensation and that she must comply with the one-year application deadline if she wanted compensation to begin on the day after the date of her discharge. *Ibid*. She then filed a Substantive Appeal to the Board. R. at 770. At an

3

October 1994 hearing before a VA hearing officer, she testified (1) that "the VA counseling [she] received before [her discharge] was woefully inaccurate and incomplete"; (2) that "Dr. Sheridan . . . told me that I could not get a medical discharge or anything for my disabilities"; (3) that she (the veteran) had relied upon that "misinformation"; and (4) that "[she] was not rightfully and properly informed of [her] rights and benefits". R. at 759.

In the BVA decision here on appeal, the Board denied an effective date earlier than June 14, 1991, for the award of VA service connection for the appellant's psychiatric disability. R. at 1-8. The Board determined, as a finding of fact, that "the veteran was not notified by VA of benefits to which she might be entitled, including compensation based on service connection for her psychiatric disability, at the time of her discharge from service." R. at 3. However, the Board then concluded that VA's failure to notify "may not provide a basis for awarding retroactive benefits in a manner inconsistent with the express statutory requirements of 38 U.S.C. § 5110(a), (b)(1)." R. at 6. The Board relied on VA General Counsel Precedential Opinion 17-95 (June 21, 1995) for the latter proposition. R. at 6-7.

## II.  Contentions on Appeal and Oral Argument

The appellant asks the Court to apply equitable-tolling principles to the one-year filing deadline in 38 U.S.C. § 5110(b)(1) based on an asserted failure to comply with 38 U.S.C. § 7722(b) and (c). Brief (Br.) at 5-10. She argues that VA has a duty under 38 U.S.C. § 7721(a) to seek out eligible veterans and provide them with outreach services, and that this duty includes a responsibility, under section 7722, to provide, at the time of discharge or as soon as possible thereafter, notice to each veteran regarding all benefits or services to which he or she may be entitled under laws administered by VA. *Ibid.* She notes that these provisions or substantially similar ones have been in effect since 1970. *Id*. at 5.

In support of her equitable tolling argument, the appellant cites *Smith (EF) v. Derwinski*, 2 Vet.App. 429 (1992), in which this Court applied principles of equitable tolling to section 5110(b)(3) based on a failure to comply with section 7722(d). Br. at 7. She argues that *Bailey v. West*, 160 F.3d 1360 (Fed. Cir. 1998) (en banc), permits this Court to apply the doctrine of equitable tolling where an appellant was misled or induced by VA conduct into allowing a filing deadline to

4

pass; she asserts that she did not file her claim until two months after the expiration of the one-year section 5110(b)(1) deadline because (1) VA breached its duty under section 7722 by failing to provide her with notice of her eligibility for benefits and (2) Dr. Sheridan (a non-VA physician employed by the U.S. Army) told her that her condition was noncompensable. Br. at 11-12. Finally, the appellant asserts that 38 U.S.C. § 503(a) constitutes a Congressional grant of authority for the application of equitable principles to the provisions of section 5110, because section 503(a) provides for equitable relief to remedy administrative error by employees of the Federal Government. Br. at 10.

The Secretary opposes the Court's application of equitable-tolling principles in this case and asks that the Court affirm the Board decision here on appeal. Substitute Br. (Subst. Br.) at 1-15. He argues that 38 U.S.C. § 5110(a) unambiguously provides that where a claim is filed outside the one-year post-separation period provided for in section 5110(b)(1), the effective date for compensation may be no earlier than the date of receipt of that claim and that section 5110 is not subject to equitable tolling. Subst. Br. at 7. The Secretary further asserts that VA's failure to comply with section 7722 may not provide a basis for equitable tolling and cites *Rodriguez v. West*, 189 F.3d 1352 (Fed. Cir. 1999), *reh'g denied* (en banc), *cert. denied*, 529 U.S. 1004 (2000), in which the U.S. Court of Appeals for the Federal Circuit (Federal Circuit), according to the Secretary, held that section 7722 does not create any enforceable rights. Subst. Br. at 9-10. The Secretary contends that the appellant's reliance on *Smith (EF)* is misplaced because the equitable-tolling portion of that opinion constituted dictum and conflicts with what he characterizes as the holding of the Federal Circuit in *Rodriguez*. Subst. Br. at 11. He also argues that *Bailey*'s holding is limited to the Court's authority to toll the deadline for filing an appeal from an adverse BVA decision. *Ibid*.

With regard to the appellant's argument regarding section 503(a), the Secretary reiterates that *Rodriguez* prohibits the application of equitable-tolling principles where section 7722 is the basis for such application. Subst. Br. at 12. The Secretary notes that, although section 503(a) permits the Secretary to award equitable relief in certain circumstances, including where benefits have not been provided due to administrative error, this Court may not review section 503(a) determinations. Subst. Br. at 12.

The Secretary then argues that, even if equitable tolling were an available remedy in the instant case, the appellant would not be entitled to such remedy because the Secretary previously (in 1976 when the appellant was discharged from active duty) complied with section 7722. Subst. Br. at 12. The Secretary attaches to his brief a copy of a document that he asserts contains the procedure that VA follows upon a veteran's discharge. Subst. Br. at Attachment (Att.) B. The Secretary also attaches to his brief, and has submitted as the sole document in the supplemental record on appeal, a copy of a document that he states shows that the veteran received notice in 1976 pursuant to the policy set forth in Attachment B to his substitute brief. Subst. Br. at Att. C. He argues that, although the Board did not discuss the two documents in its decision, the Board had constructive notice of them and that the documents were, under *Bell v. Derwinski*, 2 Vet.App. 611 (1992), part of the record before the BVA. Subst. Br. at 13. The Secretary further asserts that, according to the policy set forth in Attachment B, the Secretary is not obligated to send notice under section 7722 until VA receives a copy of the veteran's DD 214 (Subst. Br. at 13-14) and that it is unclear both whether VA received the veteran's DD 214 upon her separations from service in 1980 and 1990 and whether the veteran or her unit bore the responsibility for forwarding that document to VA (Subst. Br. at 13-14). The Secretary notes that if the Court finds equitable-tolling principles potentially applicable in this case, a remand would be required for the Board to conduct initial factfinding regarding these questions. Subst. Br. at 14.

In her reply brief, the appellant asserts that the Secretary's reliance on *Rodriguez* is misplaced for two reasons. First, she argues that *Rodriguez* dealt only with the application of subsection (d) of section 7722, whereas the instant case pertains to subsections (b) and (c). Reply at 1. The appellant notes that subsection (d) contains hortatory language ("to the maximum extent possible") not contained in the subsections here at issue and asserts that where Congress includes language in one section of a statute but omits it in another section, it is presumed that Congress did so intentionally. *Ibid*. (citing *Boyer v. West*, 210 F.3d 1351, 1356 (Fed. Cir. 2000)).

She also argues that *Rodriguez* is distinguishable because in that case the appellant, a widow who filed a claim for entitlement to non-service-connected death pension, could (unlike the appellant in the instant case who as a veteran can invoke the one-year post-separation exception contained in subsection (b)(1) of section 5110) invoke no subsection in section 5110 that would provide for an

exception to the general rule of subsection (a). The general rule in subsection (a) is that "[u]nless specifically provided otherwise in this chapter, the effective date of an award . . . shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor." 38 U.S.C. § 5110(a). Subsection (b)(1) provides that "[t]he effective date of an award of disability compensation to a veteran shall be the day following the date of the veteran's discharge or release if application therefor is received within one year from such date of discharge or release." 38 U.S.C. § 5110(b)(1). The appellant asserts that this distinction is significant because the instant appellant's ability to invoke an exception "provides a *substantive* basis for the requested relief" that "justifies contemplating the requested relief as a 'benefit' established by law" rather than relief that is equitable in nature. Reply at 2 (citing *Darrow v. Derwinski*, 2 Vet.App. 303, 306 (1992), regarding that distinction).

At oral argument before the Court, there was extensive discussion regarding the Secretary's discretionary authority under 38 U.S.C. § 503(a) to provide equitable relief based on administrative error. In view of that discussion and in order to conserve judicial resources, on May 13, 2002, the Court issued an order staying proceedings in this case in order to give either party the opportunity to pursue this remedy. *Andrews v. Principi*, No. 99-1048, 2002 WL 1009667, at *1 (May 13, 2002). On June 3, 2002, the appellant advised the Court that she had formally submitted an application for equitable relief pursuant to 38 U.S.C. § 503(a). Appellant's Response (Resp.) at 1. On June 27, 2002, the Secretary submitted a response to the Court's May 13, 2002, order and asserted that the appellant's application for administrative relief had been referred to the VA Veterans Benefits Administration (VBA) for consideration (which would require up to five business days) and that if the VBA made a favorable recommendation for consideration, "the ruling on the application may take up to 90 business days". Secretary's June 2002 Resp. at 1. On August 2, 2002, the Secretary advised the Court that the VBA had determined that referral to the Secretary of the appellant's request for equitable relief was inappropriate at this time because the appellant, due to her pending appeal in this Court, had an available adequate legal remedy. Secretary's August 2002 Resp. at 1, Exhibit 1.

7

### III. Analysis

#### A. Applicable Law

*1. Statutory Provisions*.  Subsection (a) of section 503 of title 38, U.S. Code, provides:

> (a) If the Secretary determines that benefits administered by the Department have not been provided by reason of administrative error on the part of the Federal Government or any of its employees, the Secretary may provide such relief on account of such error as the Secretary determines equitable, including the payment of moneys to any person whom the Secretary determines is equitably entitled to such moneys.

38 U.S.C. § 503(a).  Section 5110 of title 38, U.S. Code, provides in pertinent part:

> (a)  Unless specifically provided otherwise in this chapter, the effective date of an award based on an original claim, a claim reopened after final adjudication, or a claim for increase, of compensation, dependency and indemnity compensation, or pension, shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor.
>
> (b)(1)  The effective date of an award of disability compensation to a veteran shall be the day following the date of the veteran's discharge or release if application therefor is received within one year from such date of discharge or release.

38 U.S.C. § 5110.

Subsection (a) of section 7721 of title 38, U.S. Code, provides:

> (a) The Congress declares that the outreach services program authorized by this subchapter *is for the purpose of ensuring that all veterans (especially those who have been recently discharged or released from active military, naval, or air service and those who are eligible for readjustment or other benefits and services under laws administered by the Department) are provided timely and appropriate assistance to aid and encourage them in applying for and obtaining such benefits and services* in order that they may achieve a rapid social and economic readjustment to civilian life and obtain a higher standard of living for themselves and their dependents. The Congress further declares that the outreach services program authorized by this subchapter is for the purpose of charging the Department with the affirmative duty of seeking out eligible veterans and eligible dependents and providing them with such services.

38 U.S.C. § 7721(a) (emphasis added).  Statutory section 7722 provides in pertinent part:

> (b) ***The Secretary shall by letter advise each veteran at the time of the veteran's discharge or release from active military, naval, or air service (or as soon as possible after such discharge or release) of all benefits and services under laws administered by the Department for which the veteran may be eligible.*** In carrying out this subsection, the Secretary shall ensure, through the use of veteran-student services under section 3485 of this title, that contact, in person or by telephone, is made with those veterans who, on the basis of their military service records, do not have a high school education or equivalent at the time of discharge or release.
>
> (c)(1) ***The Secretary shall distribute full information to eligible veterans and eligible dependents regarding all benefits and services to which they may be entitled under laws administered by the Department*** and may, to the extent feasible, distribute information on other governmental programs (including manpower and training programs) which the Secretary determines would be beneficial to veterans.
>
> (2) Whenever a veteran or dependent first applies for any benefit under laws administered by the Secretary (including a request for burial or related benefits or an application for life insurance proceeds), the Secretary shall provide to the veteran or dependent information concerning benefits and health care services under programs administered by the Secretary. Such information shall be provided not later than three months after the date of such application.
>
> (d) The Secretary ***shall provide, to the maximum extent possible***, aid and assistance (including personal interviews) to members of the Armed Forces, veterans, and eligible dependents with respect to subsections (b) and (c) and in the preparation and presentation of claims under laws administered by the Department.

38 U.S.C. § 7722 (emphasis added).

*2. **Equitable-Tolling Caselaw**.*  In *Bowen v. City of New York*, the U.S. Supreme Court affirmed a lower court decision applying equitable-tolling principles to the filing deadline in 42 U.S.C. § 405(g) to permit individuals who had not filed timely claims seeking judicial review of adverse Social Security Administration determinations to be members of a class in a class-action suit.  *Bowen*, 476 U.S. 467, 481-82 (1986).  Under 42 U.S.C. § 405(g), a claimant seeking review

9

of an adverse determination by the Secretary had to file his or her claim within a 60-day filing period or "within such further time as the Secretary may allow". 42 U.S.C. § 405(g). The Court concluded that the filing period was not jurisdictional in nature but was a statute of limitations and held that the time limit in section 405(g) could and, in that case, should be tolled. *See Bowen*, 476 U.S. at 478-80. With regard to equitable-tolling principles, the Court stated in *Bowen* that, although the petitioners argued "that equitable tolling is permissible only in cases in which the public treasury is not directly affected", the Court "decline[d] to hold that the doctrine of equitable tolling is so limited." *Id*. at 479. The Court added: "When the application of the doctrine is consistent with Congress' intent in enacting a particular statutory scheme, there is no justification for limiting the doctrine to cases that do not involve monetary relief." *Ibid*. The Court noted that section 405(g) "is contained in a statute that Congress designed to be 'unusually protective' of claimants", and that Congress expressly authorized the Secretary to toll the 60-day limit. *Id*. at 480. The Court concluded that the tolling of section 405(g) was (1) consistent with the overall Congressional purpose and (2) nowhere eschewed by Congress. *Ibid*.

Four years later, however, in *OPM v. Richmond*, the Supreme Court expressly declined to apply equitable principles to compel payment of disability benefits to a claimant who claimed that a federal employee's erroneous advice caused him to become ineligible for the benefits. *Richmond*, 496 U.S. 414, 416 (1990). The Court held that payments from the Federal Treasury are limited to those authorized by statute and that it thus did not "have authority to order the payment [that the claimant] seeks". *Ibid*. The Court then concluded that ordering the payment of public funds sought by the respondent would violate the U.S. Constitution's Appropriations Clause, which provides: "No money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." *Id*. at 424 (quoting U.S. CONST. art. I, § 9, cl. 7). The Court noted that the very purpose of the Appropriations Clause is "to assure that public funds will be spent according to the letter of the difficult judgments reached by Congress as to the common good and not according to the individual favor of Government agents or the individual pleas of litigants." *Id*. at 428; *see also Schweiker v. Hansen*, 450 U.S. 785, 788 (1981) (referring to "the duty of all courts to observe the conditions defined by Congress for charging the public treasury").

Later that same year, without reference to *OPM v. Richmond*, the Supreme Court in *Irwin v. Department of Veterans Affairs* held that equitable-tolling principles that apply to private litigants also apply to the United States and that tolling may be available, inter alia, "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass". *Irwin*, 498 U.S. 89, 95-96 (1990). In adopting a rule of general applicability of private-suit equitable-tolling principles in suits against the Federal Government, the Court seemed to abolish prior equitable-tolling caselaw distinctions between jurisdictional time limits and statutes of limitations. *See id.* at 95 (stating that Supreme Court was "not persuaded" as to meaningful difference, for purposes of availability of equitable tolling, between filing deadline tolled in *Irwin*, *supra*, and type of deadline involved in *Soriano v. United States*, 352 U.S. 270 (1957), where Court had held claim jurisdictionally barred). The Court concluded that equitable-tolling principles were applicable to a filing deadline in an employment-discrimination suit against VA but declined to apply those principles there, noting that they "do not extend to what is at best a garden variety claim of excusable neglect." *Id.* at 96.

In *Bailey*, *supra*, the Federal Circuit held that, absent a contrary Congressional expression, this Court would be entitled to toll the 120-day period in 38 U.S.C. § 7266(a) for filing a Notice of Appeal (NOA) in this Court. *Bailey*, 160 F.3d at 1365. Specifically, the Federal Circuit held that that filing period could be tolled where a veteran was misled by a VA benefits officer into believing that the officer would file his NOA for him. *Ibid*. The court noted the "particular" relationship between veterans and the government in finding that that veteran "was misled by the conduct of his adversary into allowing the filing deadline to pass." *Ibid*. The court held that, although there was no suggestion of misconduct, such as tricking the veteran into missing the 120-day NOA filing deadline, "a veteran's inducement by an adversary's conduct is akin to grounds sufficient to toll a limitations period in a private suit." *Ibid*. (citing *Irwin, supra)*.

In *Smith (EF)*, *supra*, upon which the appellant here principally relies, this Court concluded in 1992 that where VA failed to comply with section 7722(d), such failure constituted a breach of a duty owed to an individual veteran and warranted the equitable tolling of the one-year filing requirement for a specific request for retroactive non-service-connected pension benefits. *Smith (EF)*, 2 Vet.App. at 429. The Court rejected the Secretary's characterization of section 7722(d) as

11

"merely a part of the general direction to . . . VA to develop large-scale veterans' outreach programs" that "thus does not create any specific duties owed to individual veterans." *Id*. at 431. The Court noted the existence in that case of the necessary causal relationship between VA's breach and the veteran's failure to file a timely claim for retroactive benefits, because there was "every reason to conclude from the appellant's pattern of communication with . . . VA that he would have made the specific request well within the one-year time period." *Id*. at 435.

Subsequent to this Court's decision in *Smith (EF)*, the Federal Circuit decided *Rodriguez*, *supra*. There, the court addressed whether VA's failure to comply with section 7722(d) (quoted above) or with 38 U.S.C. § 5102 (providing that upon request, "the Secretary shall furnish such person, free of all expense, all such printed instructions and forms as may be necessary in establishing such claim") could provide the basis for the tolling of section 5110(a) and the assignment of an EED; the court stated that it was "doubtful" that either provision created any enforceable rights. *Rodriguez*, 189 F.3d at 1355. In so concluding, the court found it significant that the provisions (1) did not prescribe any remedy for breach and (2) "appear[ed] to be hortatory rather than to impose legal obligations upon the Secretary." *Ibid*. In the concluding paragraph of *Rodriguez*, the Federal Circuit stated:

> In any event, ***nothing in those provisions indicates, or even suggests, that the Secretary's failure to provide assistance to a claimant justifies ignoring the unequivocal command in 38 U.S.C. § 5110(a) that the effective date of benefits cannot be earlier than the filing of an application therefor***. . . . Rodriguez did not file a formal or informal application until 1990, and under the statute that – and not an earlier date at which the Secretary allegedly failed to provide her assistance in filing her claim – is the effective date of her benefits.

*Ibid*. (emphasis added) (internal citations omitted).

### B. Applicability of Equitable-Tolling Principles to Section 5110(b)(1)

As a preliminary matter, the Court notes that it finds no merit in the appellant's argument that section 503(a) lends support to her assertion that section 5110(b)(1) can be tolled. The appellant argues that section 503(a) permits the equitable tolling of section 5110 when VA has committed administrative error by not complying with section 7722. Br. at 9. The appellant further asserts that the fairness concerns expressed by Congress in adopting section 503(a) weigh in favor of the Court's

12

applying equitable-tolling principles in this case. *Id*. at 9-10. Section 503(a), however, permits only **the Secretary** to grant equitable relief, "including the payment of moneys", upon a finding of administrative error. 38 U.S.C. § 503(a). Congress did not extend this authority to the Court nor provide for administrative (BVA) or judicial review of the Secretary's section 503 determinations. *See* 38 U.S.C. §§ 511 (not including determinations under section 503 in list of Secretary's determinations subject to further review), 7104(a) (RO determinations subject to one review on appeal to BVA on behalf of Secretary). This Court has thus held that it does not have jurisdiction to review those section 503 Secretarial determinations, *see Zimick v. West*, 11 Vet.App. 45, 50 (1998); *Darrow*, *supra*, and the Court now concludes that the existence of that provision, which applies solely to the Secretary, lends no support to the appellant's contention that section 503 permits the Court to apply equitable-tolling principles to section 5110.

With regard to the Court's authority to apply equitable-tolling principles to section 5110(b)(1), the Court is bound by the Federal Circuit's controlling opinion in *Rodriguez*, *supra*, to conclude that judicial tolling is not available in this case. *Rodriguez*, *supra* ("nothing in those provisions indicates, or even suggests, that the Secretary's failure to provide assistance to a claimant justifies ignoring the unequivocal command in 38 U.S.C. § 5110(a) that the effective date of benefits cannot be earlier than the filing of an application therefor"). That opinion is binding on this Court. *See Bethea v. Derwinski*, 2 Vet.App. 252, 254 (1992) (noting that Federal Circuit precedent is binding on this Court); *Tobler v. Derwinski*, 2 Vet.App. 8, 14 (1991) (per curiam order) (same). Although the Federal Circuit's opinion in *Rodriguez* could have been more extensive, we are convinced that the emphatic conclusion in the final paragraph of that opinion did indeed represent a holding that section 5110's command as to effective dates is not subject to equitable tolling based on a failure to follow section 7722(d) and that to the extent that *Smith (EF)* constituted binding precedent to the contrary, it has not survived *Rodriguez*. Because the Court has declined above to apply equitable-tolling principles to section 5110(b)(1) in this case, it need not reach the parties' contentions as to whether the Secretary in the instant case complied with section 7722.

13

## IV.  Conclusion

Upon consideration of the foregoing analysis, the record on appeal, and the parties' pleadings, the Court holds that the appellant has not demonstrated that the BVA committed error that would warrant reversal or remand.  Therefore, the Court affirms the September 23, 1998, BVA decision.

AFFIRMED.


## Separate Views

The author judge writes these separate views to comment on two matters.  First, although the Court is bound by the Federal Circuit's opinion in *Rodriguez*, *supra*, to conclude that judicial tolling is not available in this case, *see Bethea* and *Tobler*, both *supra*, it is noteworthy that *Rodriguez* did not discuss **any** equitable-tolling caselaw; specifically, the court did not address *Irwin*, *Richmond*, or *Bowen*, all *supra*.  Additionally, the *Rodriguez* opinion's concluding paragraph, quoted in part III.A.2. of this Court's opinion, *ante* at 12, came immediately after the Federal Circuit stated that the appellant's contention regarding equitable tolling need not be discussed because it "involve[d] not the interpretation of the statutory provisions, but their application to the particular facts of this case", and that court concluded that equitable tolling in that case was "an issue beyond our jurisdiction." *Id*. at 1354.

Second, the appellant and the Secretary disagree as to whether subsection (b) or (c) of section 7722 creates any enforceable rights.  The extent to which the Federal Circuit in *Rodriguez* made a holding on that point is unclear.  In its discussion of section 7722(d) and section 5102, the *Rodriguez* opinion concluded that it was "doubtful" that either provision created any enforceable rights because the provisions did not establish any remedy for breach and "appear[ed] to be hortatory rather than to impose legal obligations upon the Secretary." *Rodriguez*, 189 F.3d at 1355.  With regard to the latter point, the Federal Circuit treated the two provisions as though they contained similar language. Section 7722(d) does contain the hortatory language "to the maximum extent possible"; however, section 5102 does not contain such a qualification and provided, at that time, that upon request "the Secretary **shall** furnish such person, free of all expense, all such printed instructions and forms as may be necessary in establishing such claim." 38 U.S.C. § 5102 (1999) (emphasis added).  The Federal Circuit did not discuss this difference between the two provisions, but, in any event, its

14

conclusions as to both appear to be of doubtful binding effect because they are prefaced by the hedge words "[i]t is doubtful" and "[t]he provisions appear", respectively.