**Earl E. FORD, Appellant,**

**v.**

**Hershel W. GOBER, Acting Secretary of Veterans Affairs, Appellee.**

No. 95–1071.

United States Court of Veterans Appeals.

Nov. 20, 1997.

David W. Blaeser, St. Paul, MN, was on the pleadings for appellant.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; David W. Engel, Deputy Assistant General Counsel; and Carolyn F. Washington, Washington, DC, were on the pleadings for appellee.

Before NEBEKER, Chief Judge, and KRAMER and STEINBERG, Judges.

STEINBERG, Judge:

The appellant, veteran Earl E. Ford, appeals, through counsel, a July 28, 1995, decision of the Board of Veterans' Appeals (BVA or Board) that, inter alia, denied entitlement to Department of Veterans Affairs (VA) disability compensation at the wartime rate for a service-connected psychiatric disability. Record (R.) at 12. The appellant has filed a brief and a reply brief, and the Acting Secretary has filed a brief. This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). For the reasons that follow, the Court will affirm the Board decision.

## I. Background

The appellant is a veteran of the Korean conflict with two separate periods of active-duty service, the first with the U.S. Army from January 1951 to October 1952 and the second with the U.S. Air Force from January 1955 to September 1957. R. at 32, 34. The report of his separation examination for his first service period reflects no psychiatric conditions. R. at 38–39. Similarly, the enlistment examination report for his second service period notes no psychiatric conditions. R. at 40–41. The record on appeal (ROA) contains no service medical records (SMRs) from his first period of service. However, SMRs from his second service period contain the December 1955 notation "Fears he is insane" and show that the examining physician prescribed phenobarbital. R. at 50. (Phenobarbital is a barbiturate used as a sedative, hypnotic, and anticonvulsant. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1274–75 (28th ed.1994).) In June 1957, the veteran was hospitalized with complaints of dreams about talking to god, of confusion, of spirits following him, and of hearing voices. R. at 64. Later that month, he was diagnosed with schizophrenic reaction, paranoid type, and the examination noted that the onset had been "approximately one year prior to admission" to the hospital. R. at 66, 68.

In October 1957, he filed an application for VA service-connected disability compensation or non-service-connected pension for a "nervous condition". R. at 70–71. A December 1957 VA medical examination report showed a diagnosis of schizophrenic reaction. R. at 79. A January 1958 VA regional office (RO) decision granted service connection for schizophrenic reaction and assigned an effective date as of the date of the veteran's separation from his second service period—September 1957. R. at 89. His schizophren-

ic reaction has been rated 100% disabling since January 1959. *See* R. at 325.

In July 1963, he requested that his disability compensation be paid at the wartime rate. R. at 118. (At that time, veterans of peacetime service received compensation for their service-connected disabilities at 80% of the rate paid to veterans of a period of war. Effective in 1973, Congress equalized the rates. *See* Veterans' Compensation and Relief Act of 1972 (VCRA), Pub.L. No. 92–328, § 108, 301(b), 86 Stat. 393, 396, 398 (1972).) The VARO responses explained that, although the veteran had entered service during wartime, the schizophrenic reaction arose during a peacetime period of service in his second period of service. R. at 121, 129. In June 1965, the RO issued a decision denying a wartime service-connection compensation rating. R. at 152.

In response to the veteran's repeated requests for compensation at a wartime rate, the RO informed him in August 1989 that he would have to submit new and material evidence to demonstrate that his service-connected schizophrenic reaction was incurred during wartime. R. at 223. He timely appealed to the Board (R. at 225, 243), and, in September 1991, he testified under oath before the Board that he believed that his psychiatric condition had had its onset during wartime because he had begun talking to himself during his first service period. R. at 278. A January 1994 BVA decision remanded his claim for a wartime compensation rate. The Board noted that it could not determine whether a March 1958 letter from the RO to the veteran, awarding service connection for the condition in question, contained a statement that compensation was to be paid at a peacetime rate, and that if the veteran had not then been so informed the issue needed to be adjudicated de novo and did not require new and material evidence to reopen, as the RO had concluded in 1989. R. at 394.

On remand, the RO apparently found that the veteran had not been informed in 1958 that payment was to be made at the peacetime rate. *See* R. at 41 (Statement of the Case). On remand, the veteran also requested that his case be considered under 38 U.S.C. § 1702 (R. at 429), which supplies a presumption of service incurrence, for the purposes of medical treatment, for, inter alia,

a Korean conflict veteran whose psychosis manifests prior to February 1, 1957. The RO subsequently issued a rating decision confirming its prior decisions and concluding that 38 U.S.C. § 1702 was inapplicable to compensation but dealt only with treatment for service-connected psychosis. R. at 441–42. In the July 28, 1995, BVA decision here on appeal, the Board, referring to 38 U.S.C. § 1112 (establishing presumption of service incurrence for qualifying veterans with statutorily defined conditions that manifest within one year after service), stated: "The fact that the veteran's service may have commenced during a period of war does not lead to the conclusion that any disability manifested thereafter, even in a non-wartime period, is to be considered as having been incurred in a period of war, nor is there any statutory or regulatory provision supporting the veteran's argument in this regard." R. at 14. The Board found no evidence suggesting a psychiatric disability prior to December 1955 and therefore denied compensation at a wartime rate. R. at 14–16. A timely appeal to this Court followed.

## II. Analysis

### A. *Compensation at Wartime or Peacetime Rate Issue*

The instant appeal arises, in part, because prior to July 1, 1973, service-connected disabilities incurred during other than a period of war were compensated by VA at a lower rate than those same conditions incurred during a period of war. *Compare* 38 U.S.C. § 334 (1972) *with* 38 U.S.C. § 1134 (linking disability compensation rate for peacetime-incurred conditions to 38 U.S.C. § 1114 (wartime rates)); *see also* VCRA § 108, 301(b). Thus, because in 1958 the veteran was granted a disability-compensation effective date retroactive to his service-separation date, the instant appeal relates to the payment of benefits for his service-connected schizophrenic reaction between his discharge in 1957 and June 30, 1973. The veteran contends that he was entitled to be compensated at a wartime rate throughout that period. On appeal, he argues that his service-connected schizophrenia first manifested during wartime and/or that the presumption in 38 U.S.C. § 1112

warrants the conclusion that his schizophrenic reaction first arose during a period of war.

Wartime disability compensation is paid under 38 U.S.C. § 1110, as follows:

> For disability resulting from personal *injury suffered or disease contracted* in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, in the active military, naval, or air service, *during a period of war* . . . .

38 U.S.C. § 1110 (emphasis added); *see also* 38 C.F.R. § 3.303(a) (1996). Pursuant to 38 U.S.C. § 101(9), the period of wartime service for veterans of the Korean conflict extends from June 27, 1950, to January 31, 1955. *See also* 38 C.F.R. § 3.2(e) (1996).

■ The Court holds that section 1110 is plain on its face. *See Gardner v. Brown,* 5 F.3d 1456, 1458 (Fed.Cir.1993) ("starting point in interpreting a statute is its language, for if the intent of Congress is clear, that is the end of the matter" (internal quotation marks omitted)), *aff'd,* 513 U.S. 115, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994); NORMAN J. SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION § 46.01 (5th ed.1992) (plain meaning rule). Thus, the words "[f]or disability resulting from personal injury suffered or disease contracted in line of duty . . . during a period of war" in 38 U.S.C. § 1110 mean that the service-connected condition at issue must have been incurred during wartime and not during the peacetime component of a period of service that included both wartime and peacetime service. The question on appeal is therefore whether the appellant's service-connected schizophrenic condition was incurred "during a period of war", which is to say during his first period of service or any time in his second period of service *prior* to February 1, 1955.

■ *1. Factual Argument:* The appellant contends that his service-connected condition is related to wartime experiences because, as he testified in September 1991, he had begun talking to himself during his first period of service (R. at 278). "[T]he question of service connection is a question of fact". *Godfrey v. Brown,* 8 Vet.App. 113, 118 (1995); *see also Irby v. Brown,* 6 Vet.App. 132, 135 (1994). Similarly, " '[r]esolution of the question of whether the Board accurately determined the effective date requires the Court

to decide whether the Board erred in its factfinding.' " *Scott (Charles) v. Brown,* 7 Vet.App. 184, 188 (1994) (quoting *Quarles v. Derwinski,* 3 Vet.App. 129, 135 (1992)). Thus, the determination of whether a particular service-connected condition was incurred "during a period of war" is a factual question. The Court reviews BVA factfinding under a "clearly erroneous" standard; "if there is a 'plausible' basis in the record for the factual determinations of the BVA, . . . [the Court] cannot overturn them". *Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990); 38 U.S.C. § 7261(a)(4).

■ For a service-connection claim to be well grounded, there generally must be (1) medical evidence of current disability; (2) medical, or in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the in-service injury or disease and a current disability. *See Caluza v. Brown,* 7 Vet.App. 498, 506 (1995), *aff'd. per curiam,* 78 F.3d 604 (Fed.Cir.1996) (table). Where the determinative issue involves either medical etiology (such as with respect to a nexus between a current condition and an in-service disease or injury) or a medical diagnosis (such as with respect to a current disability), competent medical evidence is required to fulfill the well-grounded-claim requirement of section 5107(a) that the claim be "plausible" or "probable", *Grottveit v. Brown,* 5 Vet.App. 91, 93 (1993) (quoting *Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990)). Where the determinative issue does not require medical expertise, lay testimony may suffice by itself (such as in the recounting of symptoms or, in certain circumstances, as to in-service incurrence or aggravation of a disease or injury). *See Caluza, supra; Heuer v. Brown,* 7 Vet.App. 379, 384 (1995) (citing *Grottveit, supra* ); *Magana v. Brown,* 7 Vet.App. 224, 227–28 (1994); *Espiritu v. Derwinski,* 2 Vet.App. 492, 494–95 (1992).

■ In the instant case, there is no evidence of record other than the appellant's own hearing testimony to suggest that his psychiatric disability was incurred during wartime. Although he has testified that he began talking to himself during his first period of service (R. at 278), the first notation in

his SMRs of any psychiatric complaint occurs in December 1955 (R. at 50), 10 months after the close of the Korean-conflict war period. The first diagnoses of schizophrenic reaction in the ROA occurred in June 1957, and the onset was noted to be "approximately one year prior to admission". R. at 64, 66, 68. In such a case—where the ROA is devoid of any competent medical evidence linking the veteran's schizophrenic reaction to his wartime service—the Court cannot conclude that the Board was clearly erroneous in concluding that the factual evidence presented did not indicate that the veteran's condition was incurred during his wartime service.

██ *2. Presumption Argument Based on 38 U.S.C. § 1112:* The veteran also contends that 38 U.S.C. § 1112 establishes a presumption that his condition was incurred during a period of war because his schizophrenic reaction was manifest in December 1955, within one year after the end of the Korean conflict. Section 1112 provides:

(a) For the purposes of section 1110 of this title, and subject to the provisions of section 1113 of this title, in the case of any veteran who served for ninety days or more during a period of war—

(1) a chronic disease *becoming manifest* to a degree of 10 percent or more *within one year from the date of separation from such service;*

. . .

shall be considered to have been incurred in or aggravated by such service, *notwithstanding there is no record of evidence of such disease during the period of service.* 38 U.S.C. § 1112 (emphasis added). Schizophrenia, as a psychosis, is a chronic disease that warrants the application of section 1112 when it manifests to a degree of 10% or more in a veteran who has served for 90 days or more during a period of war. *See* 38 U.S.C. § 1101(3); 38 C.F.R. §§ 3.307(a), 3.309(a) (1996); *Triplette v. Principi,* 4 Vet.App. 45, 50 (1993). However, on its face, it is clear that section 1112 applies only where a covered condition is first manifest within one year after the veteran's separation from service. *See Gardner, supra.* Where, as here, the condition was manifest *in service,* section 1112 is not for application. *See Caldwell v. Derwinski,* 1 Vet.App. 466, 469 (1991) (sec-

tion 1112 "contemplate[s] a situation in which a veteran who develops a chronic disease within the presumpti[on] period, but does not have a diagnosis of the illness in his service records, may be granted entitlement to service connection for compensation purposes").

In sum, section 1112 is an ameliorative provision that lightens the evidentiary burden placed upon a veteran by permitting a condition that first arises within one year after separation to be presumed to have been incurred in service; however, section 1112 says nothing about *when* a condition incurred in service was so incurred, nor does it apply where, as here, the condition was not first manifest *after* service. The Court thus holds that the Board was correct as a matter of law in determining that section 1112 was not for application in the instant case, and thus the Court cannot conclude that the Board's decision was clearly erroneous in finding that the appellant's schizophrenic reaction did not have its onset during a period of war.

*B. Additional Issues*

██ The BVA decision on appeal, in addition to its denial of disability compensation at a wartime rate for the veteran's service-connected psychiatric condition, also denied entitlement to special monthly compensation and to service connection for hypertension. R. at 12. Although the special monthly compensation and hypertension issues were addressed in the appellant's informal brief, the appellant subsequently obtained counsel, and the formal brief and reply brief filed by his counsel, which supersede the informal brief, do not develop those issues. Because the appellant has not addressed in his formal pleadings the claims for special monthly compensation and service connection for hypertension, the Court will consider those claims to have been abandoned as part of this appeal. *See Degmetich v. Brown,* 8 Vet.App. 208, 209 (1995), *aff'd,* 104 F.3d 1328 (Fed.Cir. 1997); *Bucklinger v. Brown,* 5 Vet.App. 435, 436 (1993). The Court further notes that the appellant did not appeal the Board's determination (R. at 15) that the presumption of service connection in 38 C.F.R. § 17.33 (1994) (implementing 38 U.S.C. § 1702) for purposes of treatment of active psychoses

does not apply to the adjudication of disability-compensation claims. That issue also will be considered to have been abandoned. *See Degmetich* and *Bucklinger*, both *supra.*

### III. Conclusion

Upon consideration of the record and the submissions of the parties and in light of the above analysis, the Court holds that the appellant has not demonstrated that the Board committed error that would warrant remand or reversal under 38 U.S.C. §§ 1110, 1112, 1131, 5107(a), and 7261 and 38 C.F.R. §§ 3.307(a) and 3.309(a). Accordingly, the Court affirms the July 28, 1995, BVA decision.

AFFIRMED.