**This version includes the errata published on 14Jun04 - e**

## UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 02-0682

HOMERO CANTU, APPELLANT,

V.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided    June 1. 2004  )

*Sandra E. Booth*, of Columbus, Ohio, was on the brief for the appellant.

*Tim McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Edward V. Cassidy, Jr.,* Acting Deputy Assistant General Counsel; and *Nicole Degraffenreed*, all of Washington, D.C., were on the brief for the appellee.

Before FARLEY, STEINBERG, and GREENE, *Judges.*

STEINBERG, *Judge*:  The appellant, through counsel, seeks review of a January 17, 2002, Board of Veterans' Appeals (Board or BVA) decision that denied his claim for entitlement to payment of medical expenses incurred during hospitalization at a private facility from January 28 to February 3, 1993.  Both parties filed briefs, and the appellant filed a reply brief.  On appeal, the appellant does not challenge the Board's determination that he does not qualify for payment of the expenses under 38 U.S.C. §§1703(a)(1) and 1728(a) (Record (R.) at 9-10).  Brief (Br.) at 7. Accordingly, any claim based on those provisions is deemed to have been abandoned.  *See Ford v. Gober*, 10 Vet. App. 531, 535-36 (1997); *Degmetich v. Brown*, 8 Vet.App. 208, 209 (1995), *aff'd*, 104 F.3d 1328 (Fed. Cir. 1997).  For the reasons that follow, the Court will reverse the BVA decision and remand the matter for the Board to order VA payment of the allowable medical expenses incurred in connection with that hospitalization.

## I. Relevant Background

The veteran, Homero Cantu, had active U.S. military service from March 1967 to October 1968. R. at 14. He has been awarded Department of Veterans Affairs (VA) service connection for epistaxis (nosebleeds), rated 0% disabling effective from November 1979. R. at 147. He was intermittently a patient at the Corpus Christi, Texas, VA Outpatient Clinic (VA Clinic) for an upper gastro-intestinal series and for various ailments as early as September 1990, and continuing through, at least, June 1993. R. at 301 (clinical record), 318-19 (computer printout of appointment dates).

On January 28, 1993, the veteran went to the VA Clinic with complaints of drowsiness, weakness, dizziness, exhaustion, chills, poor appetite, and unsteady gait, all of which had been present for the past three days, and complaints of constipation, dysuria, low-back pain, and abdominal pain, all of which had been present for the prior week. R. at 44 (VA medical certificate dated Jan. 28, 1993, at 10:25 a.m.). The VA medical assessment included sepsis, abdominal pain, ileus, and the necessity to rule out cirrhosis of the liver, hepatic encephalopathy, and abdominal or spleen hematoma. R. at 44-45. (Sepsis is the "presence in the blood or other tissues of pathogenic microorganisms or their toxins." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1507 (28th ed. 1994) [hereinafter DORLAND'S]. Ileus is "obstruction of the intestines." *Id.* at 819. Hepatic encephalopathy is "a condition usually occurring secondarily to advanced disease of the liver but also seen in the course of any severe disease or in patients with portacaval shunts. It is marked by disturbances of consciousness which may progress to deep coma (hepatic coma)" among other things. *Id.* at 550. Hematoma is "a localized collection of blood, usually clotted, in an organ, space, or tissue, due to a break in the wall of a blood vessel." *Id.* at 742.) In a handwritten note, the VA examiner stated the plan of treatment as including the following: "Transfer p[atien]t to MMC [(Memorial Medical Center, Corpus Christi, Texas)] ER [(emergency room)] by ambulance [with] copy of Medical Certificate [,] list of medicines[, l]ab test reports[.] Dr. Greene accepts p[atien]t 12:15 PM." R. at 45 (VA Form 10-10M). MMC is a private facility.

A VA Clinic report-of-contact form (ROC form) dated January 28, 1993, noted, by means of a checkmark, that the veteran and the hospital were notified that hospitalization would not be at government expense because the veteran is "non-service connected". R. at 16. In a handwritten note, the form stated: "P[atient] told: Hosp[ital] [and] amb[ulance] at p[atien]t's expense. Patient

disagrees." *Ibid*. The form also noted, by means of a checkmark, that the veteran's condition had not worsened in the clinic to become life threatening, and the form included the following handwritten note: "R/O Sepsis[,] R/O Hepatic encephalopathy[,] R/O cirrhosis of the liver". *Ibid*. The form was prepared by a person, whose last name is illegible, from "MAS" (Medical Administration Service). *Ibid.*

At 12:21 p.m. on January 28, 1993, the VA Clinic called a private ambulance service requesting that the veteran be transferred to MMC. R. at 309. Upon arrival at MMC, the veteran was examined at 1:10 p.m. by Dr. Greene, who diagnosed the veteran as having possible ileus, possible small-bowel obstruction, or possible bacterial enteritis, and instructed that he be admitted. R. at 60. MMC medical records noted that the veteran had been "referred" to the emergency room from the VA Clinic. R. at 48, 61, 75, 76, 83. An x-ray of his abdomen showed "multiple layers of dilated small bowel" and "small[-]bowel obstruction". R. at 52. A CT (computed tomography) scan of the abdomen revealed "severe pancreatitis with pseudocyst formation and many additional pancreatic fluid pockets throughout the peritoneum" with the "largest one impinging severely upon the stomach from the posterior aspect." R. at 50.

MMC progress notes recorded that on January 29, 1993, the MMC financial department was "[w]orking on financial classification [and] also a referral to Duval County to help pay [the veteran's] medical bills." R. at 73. Additional MMC notes dated that day stated: "To discuss p[atient] for VA San Antonio – repair of hernia." R. at 74.

In a medical record from the VA Clinic, the examiner who had directed that the veteran be transferred to MMC noted that on January 29, 1993, a physician from MMC called the VA Clinic and stated that the veteran was feeling better. R. at 53. (Although the VA examiner's signature is not legible, the veteran at a hearing later identified this VA physician as Dr. Fernando Ortiz. R. at 104.) The VA examiner also noted: "If stable[,] p[atien]t may be sent to ALMMVH [(Audie L. Murphy Memorial Veterans Medical Center)]." R. at 53. On February 3, 1993, the VA examiner noted that the same MMC physician had called him and related, among other things, that the veteran was "found to have a pancreatic pseudocyst". *Ibid*. The VA examiner also noted: "Arrangements for p[atien]t to be transferred to ALMMVH were suggested. [Patient] agrees to it." *Ibid.* Information concerning the transfer to that VA facility is also reflected in MMC progress notes dated

4

February 3, 1993, recorded by MMC social work services. Those MMC notes stated that an order to transfer the veteran to VA Audie L. Murphy Memorial Veterans Hospital in San Antonio, Texas (hereinafter AM VAMC), had been received; that the veteran had agreed to the transfer; that the AM VAMC had agreed to accept the veteran; and that VA would send an ambulance to transport the veteran there. R. at 79. The veteran was discharged from MMC on either February 3 or February 4, 1993, with the diagnosis of pancreatic pseudocyst, anemia, and insulin-dependent diabetes mellitus. R. at 40, 48-49, 200. (The record on appeal (ROA) is not entirely clear as to the date of discharge. *Compare* R. at 48 (MMC discharge summary noting date of discharge as "2/03/93"), *and* R. at 73-79 (MMC progress notes covering period January 29, 1993, through February 3, 1993), *with* R. at 55 (MMC registration form noting date of discharge as "2/4/93"), *and* R. at 200 (MMC bill statement for the veteran noting discharge date of "2/04/93").) His discharge summary noted that his followup care "would be through the [VA] Clinic." R. at 48-49. The total charges associated with his care at MMC were $11,347.15, which included $281.50 for the private ambulance services to MMC; $10,681.65 for his MMC hospitalization from January 28 through February 4, 1993; $110.00 for an initial hospital consultation at MMC on February 3, 1993, with a physician (Dr. David E. Pearce); and $274.00 for radiology at MMC. R. at 200-02, 309-16.

In March 1993, the veteran submitted to the VA Clinic the bills for the above expenses. *See* R. at 30. A June 1993 entry made by a VA claims clerk regarding the claim noted that the veteran was referred to MMC for pancreatic pseudocysts, that he was apprised at the time of the referral that this hospitalization would not be at VA expense, that he had no service-connected disabilities, and that he was "not eligible for emergency medical treatment in the private sector at VA expense." R. at 18. The clerk recommended denial of the claim, and the AM VAMC chief medical officer concurred. *Ibid.*; *see* R. at 26, 122. Thereafter, the veteran filed a Notice of Disagreement, stating that his transfer to MMC was authorized and that VA should pay the bills. R. at 24. In January 1994, VA issued a Statement of the Case (SOC), which noted, among other things, that on January 28, 1993, the veteran was not service connected, that the veteran had "refused to sign acknowledgment" that his referral to MMC would be at his own expense, and that on January 29, 1993, the MMC "contacted Fee Basis regarding payment of veteran's hospitalization" and the "hospital was informed [that] the veteran was not eligible for payment of private hospital costs."

R. at 30.

In his VA Form 1-9 (Substantive Appeal to the Board), the veteran argued that he is service connected for epistaxis (R. at 321), that Dr. Ortiz, the physician at the VA Clinic, ordered his transfer by ambulance to MMC's emergency room where he was admitted, that that physician provided MMC with his medical records, and that the VA Clinic gave instructions to MMC for his transfer to the AM VAMC in San Antonio. R. at 88. Before his appeal proceeded to the Board, a hearing was held in July 1994 before the assistant chief, Medical Administration Service, at the VA Medical Center (VAMC) in Temple, Texas, at which the veteran described the circumstances surrounding his transfer and admission to MMC and transfer to AM VAMC. R. at 103-16. He testified, among other things, (1) that the VA Clinic had authorized a private ambulance service to transport him to MMC (R. at 104); (2) that he had not asked the VA Clinic to send him to MMC or to request an ambulance for transfer to MMC (R. at 104, 114); (3) that he had requested to be transported to the AM VAMC because he did not have the means to pay for a private hospital or the ambulance (R. at 104, 112-13); (4) that he was never told that the private hospitalization would be at his own expense and was never approached to sign an acknowledgment (R. at 104, 108); and (5) that he had been going to the gastrology clinic at the AM VAMC intermittently "on doctor's consult" (R. at 113). He questioned why he was not transported to the AM VAMC instead of MMC on January 28, 1993, and noted that the VA physician had requested on February 4, 1993, that an ambulance transport him to the AM VAMC. R. at 104. He also testified that he had received medical services at the VA Clinic prior to January 28, 1993:

> As I stated before, I came as a walk-in on emergency. I have no means of making payments to my medical needs. This was my not my first time as a walk-in and I have been coming to the [VA] Clinic since 1990 on scheduled . . . doctor appointments. . . . These symptoms have been present many times and I have been . . . referred in the past on several consults to [AM VAMC] by the attending physician at the [VA C]linic in Corpus Christi. This time, I was unable to drive my own vehicle and a friend of mine, Mr. Galvan, got me out of bed and took me [there] since I ha[d] been . . . about a week and a half . . . in bed . . . due to this . . . illness.

R. at 106. The veteran further testified that he had told the ambulance driver that he did not have the money and did not want to go to MMC, and that the driver responded that he had orders from

the doctor at the VA Clinic and that the veteran was not to worry about the money to pay for the ambulance. R. at 111.

In an August 1996 BVA decision, the Board remanded the matter to the AM VAMC, the agency of original jurisdiction for this matter, to obtain the veteran's claims file, if any existed, and to readjudicate the claim for payment of medical expenses in light of any additional information in the claims file, including any existing service-connected disabilities. R. at 123. On remand, the chief medical officer at the AM VAMC determined in July 1997 and January 1998 that the veteran's hospital admission for pancreatic pseudocysts was not related to a service-connected disability. R. at 139, 150. In August 1998, VA issued a Supplemental SOC. R. at 152. In a June 1999 BVA decision, the Board concluded that the veteran's claim of entitlement to payment by VA of unauthorized medical expenses was not well grounded. R. at 160-69. The veteran, through counsel, appealed to this Court, and in April 2001, this Court, by Clerk's order, granted the parties' joint motion to remand the matter to the Board in light of the enactment of the Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096. R. at 206 (order issued in U.S. Vet. App. No. 99-1253); *see* R. at 207-10 (joint motion for remand). On remand, the veteran, proceeding without counsel, submitted to the Board, among other things, a copy of the brief that he had filed in this Court in U.S. Vet. App. No. 99-1253 and stated that he would like the Board to consider the legal arguments presented in that brief and that he had no further argument or evidence to submit to the Board. R. at 241, 271, 272-94.

In the January 17, 2002, BVA decision here on appeal, the Board denied the veteran's claim for entitlement to payment of medical expenses incurred during hospitalization at MMC from January 28 to February 3, 1993. R. at 1-11. The Board found that, "[a]t the time of the hospitalization, service[ ]connection was in effect for epistaxis." R. at 3, 9. The Board, however, found that there was no prior authorization for the hospitalization at MMC as required by 38 C.F.R. § 17.52(a)(3) and that such hospitalization was not for the treatment of a medical emergency that posed a serious threat to the veteran's life or health. R. at 2, 3, 10 (citing 38 U.S.C. § 1703(a)(1)). The Board also concluded that VA had complied with the requirements of the VCAA. R. at 3-4.

7

## II. Contentions of the Parties

On appeal, the appellant argues that, although he meets the eligibility criteria for hospital care under 38 U.S.C. § 1710, the Court should remand the matter to allow the Board, which did not address the appellant's eligibility for hospital care under section 1710, to make specific findings of fact in that regard in the first instance. Br. at 7-12. In addition, he argues that, assuming that he meets the eligibility requirements of section 1710, he is entitled to enforcement under 38 U.S.C. § 1703 regarding private medical services. Br. at 6. In that regard, he requests that the Court reverse certain other findings of the Board. In particular, he argues that the Board's conclusion that his medical condition was not a medical emergency within the meaning of section 1703(a)(3) is without a plausible basis in the record and should be reversed. Br. at 12-17. He also argues that the Board misconstrued the requirements of section 1703 and the implementing regulation, 38 C.F.R. § 17.52, when it stated that there had to be an "actual contract" between VA and the non-VA facility, and that that conclusion should be reversed. Br. at 18-19. Moreover, he argues that VA authorized his admission to the non-VA facility at VA expense as is required by 38 C.F.R. § 17.54(a). Br. at 19-20. Finally, the appellant argues that, if the Court does not reverse the Board's findings, the matter should be remanded for compliance with the VCAA. Br. at 20-21; Reply Br. at 13.

The Secretary maintains that the Board decision should be affirmed because it properly determined that payment for the private medical expenses under section 1703 was not warranted. Br. at 6-7. The Secretary contends that the VAMC did not provide the appellant with an individual authorization for the private medical expenses at MMC and that no contract existed between the VA Clinic and MMC. Br. at 6-7, 10. He acknowledges that the Board did not discuss the appellant's eligibility under section 1710, but asserts that any such failure is not prejudicial because that provision does not authorize the Secretary to reimburse a veteran for medical services rendered at a non-VA facility. Br. at 8. In addition, he argues that reversal is not warranted here because there exists a plausible basis in the record for the Board's determination that a medical emergency did not exist. Br. at 9.

In reply, the appellant contends that the Secretary misapprehends the Court's opinion in *Malone v. Gober*, 10 Vet.App. 539, 543 (1997), with respect to VA authorization of payment of medical services at a non-VA facility. Reply Br. at 2. He further argues that section 401 of the

Veterans Benefits Act of 2002 (VBA), Pub. L. No. 107-330, § 401, 116 Stat. 2820, 2832, which amended 38 U.S.C. § 7261 and was enacted after his principal brief had been filed, "eliminate[s] the prior deferential review of BVA decisions", "undercuts the plausible basis standard", and supports his entitlement to the remedy of reversal. Reply Br. at 4, 8-10. The appellant also argues that regardless of any change brought about by the VBA, there is no plausible basis for the Board's determinations as to a medical emergency and VA authorization, and that those determinations should be reversed as clearly erroneous. *Id*. at 8.

## III. Analysis

### *A. Applicable Law and Regulations*

The Court notes that many of the applicable statutory and regulatory provisions have been amended since the appellant's claim arose in January 1993. In this opinion, we will cite to the current provisions unless there has been a substantive change; in such case, we will cite to the provision in effect at the time that the appellant's claim arose.

In order to receive hospital care at VA expense, a veteran first must meet the basic eligibility requirements of 38 U.S.C. § 1710. In 1993, section 1710 provided:

(a)(1) The Secretary *shall* furnish hospital care, and may furnish nursing home care, which the Secretary determines is needed–

(A) to any veteran for a service-connected disability;

(B) to a veteran whose discharge or release from the active military, naval, or air service was for a disability incurred or aggravated in line of duty, for any disability;

. . .

(D) to a veteran who has a service-connected disability rated at 50 percent or more, for any disability;

(E) to any other veteran who has a service-connected disability, for *any* disability;

. . .

(I) to a veteran for a non-service connected disability, if the veteran is unable to defray the expenses of necessary care as determined under section 1722(a) of this title.

38 U.S.C. § 1710(a)(1) (1991) (emphasis added). Section 1722(a) provides that a veteran shall be considered to be unable to defray the expenses of necessary care if the veteran (1) is eligible for medical assistance under the Social Security Act, (2) is in receipt of non-service-connected pension, or (3) has an annual income less than the applicable income threshold. *See* 38 U.S.C. § 1722(a), (b); *Zimick v. West*, 11 Vet.App. 45, 50 (1998).

Veterans who are eligible to receive VA hospital care under section 1710 may also be entitled to receive hospital care at non-VA facilities at VA expense. *See* 38 U.S.C. § 1703. Under section 1703(a), the Secretary has authority to contract with non-VA hospitals for hospital care under limited circumstances, including when VA facilities are not able to provide "economical" hospital care or medical services and the care is for the emergency treatment of a veteran receiving care at a VA facility. 38 U.S.C. § 1703(a)(3); *see Malone*, 10 Vet.App. at 540.

Section 1703 of title 38, U.S. Code, provides in pertinent part:

(a) When Department facilities are not capable of furnishing economical hospital care or medical services because of geographical inaccessibility or are not capable of furnishing the care or services required, the Secretary, as authorized in section 1710 of this title, may contract with non-Department facilities in order to furnish any of the following:

. . . .

(3) Hospital care or medical services for the treatment of medical emergencies which pose a serious threat to the life or health of a veteran receiving medical services in a Department facility . . . until such time following the furnishing of care in the non-Department facility as the veteran can be safely transferred to a Department facility.

38 U.S.C. § 1703(a)(3). The Secretary has interpreted section 1703 to allow for "individual authorizations" as well as contracts with non-VA facilities. *Zimick*, 11 Vet.App. at 51 (citing 38 C.F.R. § 17.52(a) (formerly 38 C.F.R. § 17.50b(a) (1992))).

10

Moreover, the Secretary requires that, in order for a veteran to be admitted to a non-VA facility at VA expense, such an admission must be authorized in advance by VA (or within 72 hours of admission in the case of an emergency). *See Zimick*, 11 Vet.App. at 51 (citing 38 C.F.R. § 17.54 (formerly 38 C.F.R. § 17.50d (1992))). Specifically, 38 C.F.R. § 17.54(a) provides, in pertinent part:

> The admission of a veteran to a non-[VA] hospital at [VA] expense must be authorized in advance. In the case of an emergency which existed at the time of admission, an authorization may be deemed a prior authorization if an application, whether formal or informal, by telephone, telegraph or other communication, made by the veteran or by others in his or her behalf is dispatched to [VA] . . . . for veterans in the 48 contiguous States and Puerto Rico, within 72 hours after the hour of admission . . . .

38 C.F.R. § 17.54(a).

Although section 1710 contains neither a mechanism to enforce its "shall" command nor remedial provisions for its violation, section 1703(a) and the implementing regulations specifically provide for payment by VA for such care to the non-VA facilities in the certain limited circumstances described above (that is, circumstances that are relevant in the instant case). *See Malone*, 10 Vet.App. at 540, 542. (In this case, the appellant seeks to have VA make payment to MMC for the medical expenses. The appellant does not seek reimbursement.)

### B. Application of Law to the Fact

### 1. Section 1710 Eligibility

The appellant argues that, because he had a service-connected disability (epistaxis) at all times relevant to his appeal, he meets the eligibility criteria for hospital care under 38 U.S.C. § 1710(a)(1)(E), which requires the Secretary to furnish care "to a veteran who has a service[-]connected disability, for any disability." Br. at 6. He also argues that he is eligible for hospital care under section 1710(a)(1)(I), which requires the Secretary to furnish care "to a veteran for a non-service-connected disability, if the veteran is unable to defray the expenses of necessary care as determined under section 1722(a)". *Ibid*. The appellant asks the Court to vacate the Board decision and remand for further development and readjudication the matter concerning whether he met the section 1710 eligibility criteria because the Board did not make findings of fact regarding this issue. Br. at 7-12.

11

The appellant correctly notes that he had previously raised to the Board the issue of section 1710 eligibility when, following the Court's 2001 remand, he submitted to the Board a copy of his brief. Br. at 7-8. In the BVA decision here on review, the Board again did not make specific eligibility findings under section 1710. In its decision, the Board cited to section 1710(a)(1) only in noting that "VA will furnish hospital care and medical services when needed to any veteran under circumstances specified by law and regulation." R. at 7. Although the Board, in discussing whether there was a medical emergency within the meaning of section 1703(a)(3), did note that the appellant "had been receiving VA medical care for some time" (R. at 10), and it appears that the Board may have been making a finding of eligibility under section 1710, whether the Board made such finding is not entirely clear. R. at 10. Nevertheless, the Court notes that there is undisputed evidence of record that the appellant had been receiving VA medical care since 1990 ( R. at 301, 318-19) and that he was service connected for epistaxis at the time of his MMC hospitalization (R. at 147 (RO decision)). Indeed, the Board did expressly find that the appellant was service connected for epistaxis at the time of the hospitalization. R. at 3; *see also* R. at 9. It is undisputed that the treatment he received at MMC was not related to epistaxis, but that was not disqualifying under section 1710(a) in 1993 at the time of the hospitalization. As noted above, section 1710(a)(1)(E) then provided that "[t]he Secretary shall furnish hospital care . . . to any other veteran who has a service-connected disability, for *any* disability". 38 U.S.C. § 1710(a)(1)(E) (emphasis added). Applying the plain meaning of this section to the undisputed facts, the Court concludes that the appellant met the eligibility criteria for VA hospital care under section 1710.

### *2. Section 1703(a)*

In determining whether the appellant is entitled to enforcement of section 1710 under section 1703(a)(3), the following five determinations are required: (1) That the VA Clinic was not capable of furnishing the hospital care or medical services required; (2) that the VA Clinic contracted with MMC in order to furnish the hospital care or medical services (discussed in Part III.2.b., below); (3) that the hospital care or medical services were for the treatment of a medical emergency that posed a serious threat to the life or health of the appellant (discussed in Part III.2.a., below); (4) that the appellant was receiving medical services in a VA facility; and (5) that the hospital care or medical services furnished at MMC were furnished until such time as the appellant could be safely

transferred to a VA facility.  *See* 38 U.S.C. § 1703(a)(3).

In this case, there is no dispute that the appellant met requirements (1), (4), and (5), and the Court will not disturb the Board's findings with respect to these requirements.  *See Roberson v. Principi*, 17 Vet.App. 135, 139 (1993) (per curiam order) (noting that Court is without authority, under 38 U.S.C. § 7261(a)(4), to reverse findings of fact that are beneficial to claimants).  As to requirement (1), the Board acknowledged that "[i]t may . . . be surmised, because the veteran was transferred, that the VA [C]linic . . . was not equipped to fully evaluate [his] complaints upon his presentation on January 28, 1993."  R. at 10.  As to requirement (4), the Board acknowledged that he "had been receiving VA medical care for some time".  R. at 10.  In this regard, the Court notes that section 1701 (in 1993 and now) defines "medical services" to include a medical examination, 38 U.S.C. § 1701(6), and that it is undisputed that the appellant was being examined by a physician at the VA Clinic immediately prior to being transported via ambulance to MMC.  Therefore, the appellant had not only been "receiving VA medical services" in a VA facility in the months and years leading up to January 1993 but also was receiving medical services in a VA facility on January 28, 1993, immediately prior to his admission to MMC; the appellant thus satisfies this requirement of section 1703(a)(3).  *Cf. Malone*, 10 Vet.App. at 544 (concluding that claimant, who was transported to private facility via ambulance without first having been at VA facility, failed to meet requirements of section 1703(a)(3) because he was not "receiving medical services in a Department facility").  As to requirement (5), the Board noted that "VA records confirm that a physician from MMC contacted VA and arranged for the veteran to be transferred to the . . . [AM VAMC]."  R. at 5.  Specifically, the Court notes that MMC records stated that on February 3, 1993, VA had directed that the appellant be transferred to the AM VAMC and that VA would send an ambulance to transport the appellant there.  R. at 79.

The disagreement between the parties lies as to whether the appellant met requirements (2) (contract/authorization) and (3) (medical emergency).  These two requirements are discussed below in reverse order.

*a.  Medical Emergency:*  The appellant argues that all the evidence of record supports the conclusion that his condition, at the time of the transfer to MMC, posed a serious threat to his *health* within the meaning of section 1703(a)(3).  Br. at 16-17.

13

As to whether the appellant was entitled to relief under section 7103(a)(3) for a medical emergency, the Board concluded that "the medical record as a whole does not reflect transfer to MMC for treatment of a medical emergency that posed a serious threat to the veteran's life or health." R. at 10. In so concluding, the Board reasoned as follows:

> It is conceded that some of the possible diagnoses MMC were to rule out were ***indeed serious disorders*** and that the admission to MMC was through the emergency room. However, records from VA and MMC are negative for specific reference to serious or life-threatening complaints or findings. The January 28, 1993, [ROC form] completed by VA personnel specified that . . . the veteran's condition had not become life[]threatening while at the [VA C]linic. The admission to MMC was for observation; the record reflects no emergency procedures or treatment.

R. at 10 (emphasis added).

As noted above, the appellant seeks reversal of the Board's finding that there was no medical emergency that posed a serious threat to his health under section 1703(a)(3). In support of his argument, he refers to the following undisputed evidence: (1) The decision of the VA physician to direct the appellant's transfer by ambulance to a non-VA facility emergency room (R. at 45), rather than delay his admission one day, when the AM VAMC could accept him (R. at 53); (2) the Board's concession that the private-emergency-room admission was necessary to rule out "indeed serious disorders" and that the VA Clinic was not equipped to evaluate his complaints (R. at 10); (3) the VA Clinic's refusal to honor the appellant's request that he be transferred to the AM VAMC, particularly in light of the appellant's objections to transfer to MMC (R. at 113); (4) the appellant's diagnosis of "severe" pancreatitis at MMC (R. at 80); and (5) MMC's decision to keep the appellant as an inpatient for five days after obtaining approval from VA for VA to transfer him to a VA facility (AM VAMC), which decision demonstrated that the appellant was not stable enough for transfer during that period. Br. at 14-17; Reply Br. at 4-5. He asserts that there is no medical evidence to refute the above medical evidence. Br. at 16-17.

The Secretary argues that he is not authorized to reimburse a veteran for medical services rendered at a non-VA facility. Br. at 8. The Secretary reasons that *Malone*, 10 Vet.App. at 543, held that even assuming that the appellant there would have been eligible for hospital care at a VA facility under section 1710, the Court lacked the authority to require VA to reimburse medical expenses,

14

absent statutory authorization. Br. at 8. Moreover, the Secretary contends that the following evidence in the record supports the Board's determination that a medical emergency did not exist pursuant to section 1703(a)(3): (1) The January 1993 VA Clinic ROC form, which noted that the appellant's condition did not worsen at the VA Clinic to become life threatening (R. at 16); (2) the June 1993 entry by a claims clerk noting that the appellant was "not eligible for emergency medical treatment in the private sector at VA expense" (R. at 18); and (3) the medical records from the appellant's hospitalization at MMC, which do "not include any notations that [his] condition was considered life[]threatening or a medical emergency" (R. at 48-52, 59-86). Br. at 9. The Secretary argues that reversal is not warranted here because the foregoing evidence provides a plausible basis in the record for the Board's determination. Br. at 9. In so arguing, the Secretary relies on *Hicks v. Brown*, 8 Vet.App. 417, 422 (1995), and *Hersey v. Derwinski*, 2 Vet.App. 91, 95 (1992), for the proposition that reversal is not appropriate unless "[t]here is absolutely no plausible basis" for the Board's decision and that decision "is clearly erroneous in light of the uncontroverted evidence in appellant's favor." Br. at 9.

As correctly noted by the appellant, the Secretary misconstrues *Malone* and *Malone* is distinguishable from the instant case. The appellant explains that, unlike in *Malone*, which involved a claimant seeking reimbursement of private medical expenses, the instant case involves a claimant seeking direct payment of the medical expenses to the private medical providers. *Cf. Malone*, 10 Vet.App. at 540.

The Court concludes that, for the following reasons, there is no plausible basis for the Board's determination that there was no medical emergency that posed a ***serious threat to the health*** of the appellant, and that determination was therefore clearly erroneous. A determination under section 1703(a)(3) whether a medical emergency exists that poses such a threat is a question of fact subject to review in this Court under the "clearly erroneous" standard of review. 38 U.S.C. § 7261(a)(4). Under this standard of review, the Court shall "hold unlawful and set aside or reverse [a finding of material fact adverse to the claimant made by the Board in reaching a decision] . . . if the finding is clearly erroneous," 38 U.S.C. § 7261(a)(4); the Court may not overturn a factual determination of the Board where, reviewing the record in its entirety, there is "a plausible basis in the record" for it. *Mariano v. Principi*, 17 Vet.App. 305, 313 (2003); *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990)

(quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985)).

As to the January 1993 ROC form (R. at 16), the appellant correctly asserts that this report noted only that the appellant's condition "did not worsen in the Clinic to become life[]threatening", and is, at best, neutral on the question whether his medical emergency posed a serious threat to his *health*. Reply Br. at 6. Moreover, the appellant correctly notes that the Secretary's position that the appellant's condition was not a serious threat to his health is inconsistent with the Board's concession that some of the possible diagnoses that MMC was to rule out were "indeed serious disorders" that the VA Clinic was not equipped to evaluate. Reply Br. at 6-7. In addition, the claims clerk's June 1993 entry that the appellant was not "eligible for emergency medical treatment in the private sector at VA expense" (R. at 18) does not support the Board's determination because it makes a legal conclusion on eligibility without a basis in a medical opinion on the issue whether, at the time of transfer to MMC, the appellant's medical emergency posed a serious threat to his health or life. Finally, regarding the Board's statement that the appellant's admission to MMC was "for observation" (R. at 10), that statement is inconsistent with the evidence of record that reflects that Dr. Greene at MMC admitted the appellant after having diagnosed him as having possible ileus, possible small-bowel obstruction, or possible bacterial enteritis. R. at 60.

Moreover, the ROA contains sufficient evidence to reverse, rather than set aside, the Board's finding regarding the lack of a medical emergency that posed a threat to the appellant's health. *See Mariano*, 17 Vet.App. at 316-17 (reversing two clearly erroneous findings). Specifically, the ROA contains the following: (1) The handwritten note of the VA physician directing the appellant's transfer by ambulance to a non-VA facility emergency room (R. at 45), which was made over the objection of the appellant and despite his request to be sent to the AM VAMC (R. at 113); and (2) the Board's concession that the private-emergency-room admission was necessary to rule out "indeed serious disorders" and that the VA Clinic was not equipped to evaluate his complaints (R. at 10). Accordingly, examining the record in its entirety, the Court concludes that there was no plausible basis in the record for the Board's factual determination that the appellant's medical condition did not pose a threat to his health, and because all the evidence in the record supports the finding that such a threat did exist, the Court will reverse that finding. *See* 38 U.S.C. § 7261(a)(4); *Mariano*, *supra*.

***b. Prior Authorization:*** As to no prior authorization, the Board stated the following:

> In this case, the veteran initially presented to the VA outpatient clinic in Corpus Christi and was transferred, at the direction of VA medical personnel, to the emergency room at MMC. Inasmuch as clearly VA personnel knew that the veteran was admitted to MMC from the emergency room, it can be argued that pre-transfer or post-transfer communications between personnel at each facility constituted prior authorization of the admission. 38 C.F.R. § 17.54(a). However, there is no indication in the claims folder of an ***actual contract*** between the VAMC or the outpatient clinic and MMC for the veteran's care.

R. at 9 (citing *Zimick*, 11 Vet.App. at 52) (emphasis added).

The appellant argues that the Board misconstrued the requirements of section 1703 and implementing regulation § 17.52 when it suggested that there had to be an "actual contract" between VA and the non-VA facility, and that the Board's implicit conclusion that such a contract was necessary should be reversed. Br. at 18-19. The appellant further argues that the § 17.54(a) requirement of "prior authorization" was met because (1) the VA physician directed that the appellant be transferred to MMC through its emergency room (R. at 45), (2) VA had actual knowledge prior to the MMC admission in that the VA physician directed the ambulance transfer (*ibid*.), and (3) VA was contacted by MMC within 24 hours after the emergency admission (R. at 30). Br. at 19-20. The appellant notes that the Board (R. at 9) appeared to concede that prior authorization was provided. Br. at 19.

The Secretary argues that the VAMC did not provide the appellant with an individual authorization and that no contract exists. Br. at 6-7, 10. The Secretary argues that, although the Board accurately noted that "VA personnel were aware of [the a]ppellant's admission to the private facility and such could constitute 'authorization' for purposes of 38 C.F.R. § 17.54", the ROA contains the following evidence that shows that VA did not authorize the appellant's admission to the private facility: (1) The January 1993 ROC form that indicated that the appellant and MMC were informed that the hospitalization and ambulance service would be at the appellant's expense and that VA would not pay for the hospitalization (R. at 16); and (2) the claims clerk's June 1993 entry denying the appellant's claim for payment (R. at 18). Br. at 6, 10.

It is undisputed by the parties that an informal application by telephone for admission to MMC at VA expense was made by others on the veteran's behalf within 72 hours after his admission

to MMC, and thus the timing requirement for seeking authorization in § 17.54 is met. The Secretary acknowledges that MMC called VA regarding payment on the day following the appellant's admission to MMC. Br. at 6, 10 (citing R. at 16); *see* R. at 30 (January 1994 SOC).

The question is whether the appellant received authorization from VA. The Court notes that it has previously held that, under VA regulation, the Secretary is authorized to give individual authorization. *See Zimick*, *supra*. In the BVA decision on review here, the Board misconstrued the law in stating that "there is no indication in the claims folder of an ***actual contract*** between the VAMC or the outpatient clinic and MMC for the veteran's care." An "actual contract" is not required under § 17.50b. *See Zimick*, *supra*. The Court holds that the actions of VA at the time of the transfer of the appellant from the VA Clinic to the MMC constituted a prior, individual authorization for the admission of the appellant to MMC. *See* 38 C.F.R. § 17.50b; *see also Similes v. Brown*, 6 Vet.App. 555, 557 (1994) (remanding to BVA for determination, among other things, as to whether VA physician's statement that veteran should "go to the nearest hospital" constituted prior authorization); *cf. Smith (Thomas A.) v. Derwinski*, 2 Vet.App. 378, 378-79 (1992) (holding that VA physician's advice that arrangements had been made for private hospital treatment was "not the specific type of authorization contemplated by the regulation"). Here, unlike the communication in *Similes* and *Smith*, the VA physician's communications regarding the appellant constituted much more than advice being given by a VA physician in connection with the treatment of the appellant's condition. Rather, the VA physician directed that the appellant be transferred from the VA facility to MMC through its emergency room and directed that the transfer be done by ambulance. R. at 30. The VA Clinic then called the ambulance service for the transfer. Prior to that transfer, the VA physician called MMC and received the approval of Dr. Greene, a physician at MMC, that the appellant would be accepted there.

In view of this strong evidence of prior authorization, the evidence relied on by the Secretary to support his position, and the Board's determination, that there was no prior authorization, does not constitute a plausible basis in the record. *See Mariano* and *Gilbert*, both *supra*. The statements in both the January 1993 ROC form (R. at 16) and the June 1993 claims-clerk entry (which postdated the admission by more than four months) (R. at 18) that VA would not pay for the private hospitalization were based on the erroneous information that the appellant was not service connected

for any disability at the time of the hospitalization. Both records expressly noted that incorrect information and thus were of "questionable probative value". *Mariano*, 17 Vet.App. at 311-12, 317 (holding medical-examination report to be of questionable probative value because claims file not made available to examiner before examination)

## IV. Conclusion

Based upon the ROA, the parties' pleadings, and the foregoing analysis, the January 17, 2002, Board decision is reversed and the matter is remanded for the Board, consistent with this opinion, to order VA payment of the allowable medical expenses incurred in connection with the hospitalization at MMC. *See* 38 U.S.C. §§ 1710(a)(1)(E), 1703(a)(3), 7261(a)(4); *Mariano* and *Gilbert*, both *supra*. The Court notes that a remand by this Court or by the Board confers on an appellant the right to VA compliance with the terms of the remand order and imposes on the Secretary a concomitant duty to ensure compliance with those terms. *See Stegall v. West*, 11 Vet.App. 268, 271 (1998). A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the Board's new final decision is mailed to the appellant. *See Marsh v. West*, 11 Vet.App. 468, 472 (1998).

REVERSED AND REMANDED.